Roslindale Motor Sales, Inc. *vs.* Police Commissioner
of Boston.

Suffolk.  February 6, 1989. — May 22, 1989.

Present: Wilkins, Liacos, Abrams, Nolan, & Lynch, JJ.

*License. Motor Vehicle,* License to buy and sell. *Due Process of Law,*
Hearing. *Mandamus.*

General Laws c. 140, § 59, providing that the police commissioner in Boston
and licensing authorities elsewhere may grant licenses to buy and sell
used motor vehicles, did not require that an applicant for renewal of its
license be afforded a hearing before the commissioner on its application.
[81-82]

An applicant for renewal of its license to buy and sell used motor vehicles
under G. L. c. 140, § 59, had no constitutional right to a hearing on
its application where, since the Commonwealth had a strong interest in
regulating the occupation in order to protect the public, and the particular
occupation was not one in which the applicant had a substantial vested
interest, the licensing procedure was wholly discretionary. [82-83]

An applicant for the renewal of a license to buy and sell used motor vehicles
under G. L. c. 140, § 59, which had been held by the applicant for a
number of years, was entitled to a specific statement by the municipal
licensing authority setting forth the reason or reasons for his decision
not to renew the license. [83-84]

In an action seeking judicial review of a municipal licensing authority's
denial of a renewal application for a license granted under G. L. c. 140,
§ 59, review is limited to examining whether the licensing authority
acted arbitrarily or capriciously, abused its discretion, or made an error
of law. [84]

An applicant for renewal of a license granted under G. L. c. 140, § 59,
whose application had been denied by the proper municipal officer,
should have sought judicial review under § 59 instead of relief in the
nature of mandamus under G. L. c. 249, § 5; furthermore, relief in the
nature of mandamus was inappropriate to compel the municipal officer
to exercise his judgment or discretion in favor of granting the applicant
its license renewal. [85]

Civil action commenced in the Superior Court Department
on January 26, 1987.

The case was heard by *Catherine A. White,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kevin S. McDermott* for the defendant.

*Carolyn M. Conway (Francis J. DiMento, Jr.,* with her) for the plaintiff.

ABRAMS, J. In late 1986, Roslindale Motor Sales, Inc. (Roslindale), applied to the police commissioner of Boston (commissioner) for renewal of its class 2[1] license to buy and sell used motor vehicles for the year 1987. G. L. c. 140, § 59 (1986 ed.). The commissioner, acting through Sergeant Robert Scobie (Scobie), the commanding officer of the Boston police department licensing unit, denied Roslindale's application. Although G. L. c. 140, § 59, provides for an appeal to the Superior Court, Roslindale filed a complaint in the nature of mandamus, see G. L. c. 249, § 5 (1986 ed.), asking that the commissioner be ordered to issue an application for renewal of its license and to act promptly on receipt of Roslindale's renewal application. See *infra* at 85 & n.9. After a jury-waived trial, a judge in the Superior Court reversed the commissioner's decision, and ordered the commissioner to grant Roslindale's request for renewal of its license. The commissioner appealed. The judgment was stayed pending appeal.[2] We transferred the case to this court on our own motion. For the reasons stated in this opinion, we reverse the judgment of the Superior Court.

Roslindale, a corporation with a place of business at 530 American Legion Highway in the Roslindale section of Boston, held a license to buy and sell used motor vehicles at 530 American Legion Highway from 1969 until 1986.[3] Francis J. Devine is Roslindale's president and treasurer. On January 13,

---

[1] A class 2 license is a license held by a person "whose principal business is the buying or selling of second hand motor vehicles." G. L. c. 140, § 58 (1986 ed.).

[2] Thus, the case is not moot. Cf. *Bronstein* v. *Board of Registration in Optometry,* 403 Mass. 621, 627 (1988).

[3] The record reflects that, during two of those years, Roslindale did not hold a license, but does not explain why Roslindale did not hold a license for those two years. The record also does not indicate during what two years Roslindale did not hold a license.

1987, the commissioner through Scobie rejected Roslindale's application for a license to buy and sell used motor vehicles pursuant to G. L. c. 140, § 59, stating that Devine was not a "suitable person" to hold such a license.[4]

At the jury-waived trial in the Superior Court, Roslindale offered the opinions of two witnesses[5] that Devine is a proper person to hold such a license, and that Roslindale's American Legion Highway location is a suitable space for dealing in used motor vehicles. The evidence indicates that prior to October, 1986, the Boston police department had received no complaint of improper or unsuitable conduct of Roslindale at its American Legion Highway location.

Scobie, the commissioner's agent, testified that he based his conclusion that Devine was not a "suitable person" on the commissioner's knowledge of an investigation commenced by the division of professional standards of the Boston police department relating to another of Roslindale's business locations. In addition, Scobie knew that the records of the American Legion Highway location were being reviewed as part of an ongoing investigation into alleged criminal activity by Roslindale. After reviewing the commissioner's decision and the evidence presented, the judge reversed the commissioner's decision.

We turn to the proper interpretation of the statute. General Laws c. 140, § 59, provides: "The police commissioner in Boston and the licensing authorities in other cities and towns may grant licenses [to sell used motor vehicles] under this section which shall expire on January first following the date of issue unless sooner revoked. . . . No such license shall be granted unless the licensing board or officer is satisfied from

---

[4] Although the statute uses the term "proper person," the commissioner spoke in terms of "suitable person." The parties employ the terms interchangeably. We shall use the term "proper person."

[5] One witness worked at the American Legion Highway location on a commission basis from 1982 to 1986. The other witness had known Devine for approximately twenty-five years and visited the American Legion Highway location once a week on a social basis. The competency of these witnesses to offer opinion evidence on who is a proper person was not challenged at trial and the issue is not argued on appeal.

an investigation of the facts stated in the application and any other information which they may require of the applicant, that he is a proper person to engage in the business . . . that said business is or will be his principal business, and that he has available a place of business suitable for the purpose." The statute does not provide for a hearing before the commissioner in such a case. However, in the case of revocation of an existing license, the license "shall be revoked by the licensing board or officer if it appears, *after hearing*, that the licensee is not complying with sections fifty-seven to sixty-nine, inclusive, or the rules and regulations made thereunder" (emphasis supplied). *Id.*

Roslindale argues that failure to renew a license is more like revocation than refusal to issue a new license, and, therefore, the statute requires that Roslindale be afforded a hearing on its application. We do not agree. The statute provides explicitly that a license expires at the end of one year. There is no special procedure for renewal; the applicant applies in the same manner as a first-time applicant. Roslindale "had no right to a renewal of a license. . . . [It was] entitled only to fair treatment." *Liggett Drug Co.* v. *License Comm'rs of N. Adams*, 296 Mass. 41, 52-53 (1936). See 3 C. Sands & M. Libonati, Local Government Law § 15.39, at 15-136 (1982) ("the licensee's expectations of regular renewal do not give rise to vested rights in continued licensure").

Roslindale next argues that, even if the terms of the statute do not grant it a right to a hearing, we must infer one in order to afford Roslindale due process of law. Again, we disagree. Due process requirements are implicated when licensing decisions affect a property interest. See *Regents of State Colleges* v. *Roth*, 408 U.S. 564, 569-570 (1972). To have a property interest in a license, an applicant must "have a legitimate claim of entitlement to it." *Id.* at 577. Under Massachusetts law, applicants for a license to deal in used motor vehicles do not have a claim of entitlement to such a license. The statute, which states that the commissioner "may" grant a license to a proper person, gives broad discretion to the commissioner in granting licenses. See *Turnpike Amusement Park, Inc.* v.

*Licensing Comm'n of Cambridge*, 343 Mass. 435, 437-438 (1962). The more discretion granted a governmental body in licensing, the less likely it is that citizens have a property interest in obtaining a license. See *O'Neill* v. *Nantucket*, 545 F. Supp. 449, 453 (D. Mass. 1982), aff'd, 711 F.2d 469 (1st Cir. 1983). "In a case such as the present where the Commonwealth has a strong interest in regulating an occupation in order to protect the public and where that occupation is not one in which the individual affected has a substantial vested interest, the licensing procedure is wholly discretionary, and there is no constitutional right to a hearing." *Commonwealth* v. *Gordon*, 354 Mass. 722, 726 (1968). See *Papa Gino's of Am., Inc.* v. *Taurasi*, 616 F. Supp. 77, 79 (D. Mass. 1984), aff'd, 760 F.2d 251 (1st Cir. 1985) (under Massachusetts law, applicants for a common victuallers license have no property interest in obtaining license).

Although we agree with the commissioner that under the statute an applicant for renewal of a license to deal in used motor vehicles is not entitled to an evidentiary hearing before him, we conclude that, as a matter of fundamental fairness, an applicant for the renewal of a license, especially one who has had a license for a number of years, is entitled to a specific statement by the commissioner setting forth the reason or reasons for his decision not to renew the license. A person who for a number of years has been designated as a "proper person" to operate such a business is entitled to be informed whether the commissioner has decided not to renew the license because the applicant is no longer a proper person, and why; or whether the commissioner has decided in his discretion to deny the license for some other reason.[6] The statute confers on the commissioner a "quasi judicial authority to determine the facts and to pass upon the application in each instance

[6] The statute provides that, even if the commissioner finds that the applicant is a "proper person," the commissioner is not compelled to issue the license; rather, he then "may grant" the license. G. L. c. 140, § 59. As long as he bases his decision on a legally tenable ground that is not arbitrary or capricious, the commissioner may withhold a license from a person, even if that person is "proper."

under the serious sense of responsibility imposed upon [him] by [his] official position[ ] and the delicate character of the duty entrusted to [him]." *Mosey Cafe* v. *Licensing Bd. for Boston*, 338 Mass. 199, 205 (1958), quoting *Butler* v. *East Bridgewater*, 330 Mass. 33, 37 (1953). See *Caswell* v. *Licensing Comm'n for Brockton*, 387 Mass. 864, 873-875 (1983). Therefore, the commissioner should state the reason or reasons for his decision to deny the application for renewal of a license. Such a requirement emphasizes the seriousness of such a decision and also permits the applicant to make a meaningful and focused appeal to the Superior Court under G. L. c. 140, § 59. See, e.g., *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. 296, 304 (1985). See also *Forsyth School for Dental Hygienists* v. *Board of Registration in Dentistry*, 404 Mass. 211, 219 n.3 (1989); *Eastern Scrap Servs., Inc.* v. *Harty*, 115 R.I. 260, 263 (1975). Because the commissioner did not set forth the reasons for his denial of Roslindale's renewal application, the judge correctly reversed the commissioner's decision.

In cases in which a particular statute did not explicitly provide for an appeal from the denial of a license, we have held that the proper standard of review is the "arbitrary or capricious" standard. See *Caswell* v. *Licensing Comm'n for Brockton*, 387 Mass. 864, 878 (1983) (action in the nature of certiorari); *Bennett* v. *Aldermen of Chelsea*, 361 Mass. 802, 807 (1972) (petition for writ of certiorari). Like those statutes, G. L. c. 140, § 59, "does not contain narrow and objective criteria to be applied by authorities in evaluating license applications. . . . We conclude that, in an action for judicial review of a local licensing authority's denial of [a renewal] application for a license under G. L. c. 140, § [59] . . . the appropriate standard of review is error of law or abuse of discretion, as measured by the 'arbitrary or capricious' test." *Caswell* v. *Licensing Comm'n for Brockton*, *supra* at 878. See *Mosey Cafe, Inc.* v. *Licensing Bd. for Boston*, 338 Mass. 199, 205 (1958). See also *Chief of Police of Shelburne* v. *Moyer*, 16 Mass. App. Ct. 543, 546 (1983).[7]

---

[7] Although we have said that the refusal of a mayor to give his statutory approval to a contract because of a pending criminal investigation is suffi-

In seeking relief from the courts through judicial review, Roslindale filed a complaint in the nature of mandamus. G. L. c. 249, § 5. Roslindale should have brought its complaint under G. L. c. 140, § 59, which provides that "[a]ny person aggrieved by any action of the . . . officer refusing to grant . . . a license for any cause may . . . appeal therefrom to any justice of the superior court in the county in which the premises . . . are located."[8] Further, a complaint in the nature of mandamus is inappropriate because "[i]t is well settled that the relief provided in the nature of mandamus does not lie to compel the municipal officer to exercise his or her judgment or discretion in a particular way." *Urban Transp., Inc.* v. *Mayor of Boston*, 373 Mass. 693, 698 (1977), and cases cited. Because the commissioner's decision requires the exercise of his discretion, the judge should not have ordered the commissioner "forthwith [to] grant Roslindale a . . . license for its premises at 530 American Legion Highway."[9]

The judgment is reversed, and the case remanded to the Superior Court, there to be returned to the commissioner to set forth his reason or reasons for the denial of the renewal application, and for such further proceedings consistent with this opinion as may be necessary.

*So ordered.*

---

cient to meet the arbitrary and capricious standard, see *Urban Transp., Inc.* v. *Mayor of Boston*, 373 Mass. 693, 698 (1977), the reason or reasons on which the commissioner relied to make his decision have not been established on this record. Thus, a remand is necessary.

[8] Roslindale properly did not bring its complaint pursuant to G. L. c. 30A. "[T]he commission[er] is not a State 'agency' within the meaning of the State Administrative Procedure Act, G. L. c. 30A, § 1 (2), and the provisions of that act, therefore, do not apply. See *Saxon Coffee Shop[, Inc.]* v. *Boston Licensing Bd.*, 380 Mass. 919, 922-924 (1980)." *Caswell* v. *Licensing Comm'n for Brockton*, 387 Mass. 864, 877 (1983).

[9] Roslindale did not seek such relief in its complaint. It asked that it be given a renewal application to file and a prompt decision on its application after the filing of the application. It is unclear why Roslindale wanted to repeat the procedure.