LEONARD ROSE & others[1] vs. BOARD OF SELECTMEN OF
FALMOUTH & another.[2]

No. 93-P-11.

Barnstable. November 12, 1993. - February 7, 1994.

Present: ARMSTRONG, DREBEN, & IRELAND, JJ.

*Shellfish. License. Practice, Civil,* Relief in the nature of certiorari, Record. *Administrative Law,* Decision, Judicial review, Record. *Municipal Corporations,* By-laws and ordinances.

In an action in the nature of certiorari, seeking relief from a decision of the selectmen of a town denying a license application, this court's review was confined to issues of law presented by the appellate record, which included neither a record of the selectmen's proceedings nor a transcript of the trial in the Superior Court. [35-37] IRELAND, J., dissenting, would remand the case for a statement of the selectmen's reasons in support of the denial.

General Laws c. 130, § 7, does not require a municipal licensing authority to award an exclusive shellfishing license to the first qualified applicant. [37-39]

A decision of the selectmen of a town to award a shellfishing license to the adult daughter of experienced shellfishing licensees, in preference to applicants who were not shown to have experience in shellfishing, was neither arbitrary nor capricious. [39]

The daughter of former shellfish licensees was not the alter ego of her parents for the purpose of provisions of G. L. c. 130, § 58, as in effect prior to St. 1986, c. 692, that limited the renewal of such a license to a term of fifteen years. [39-40]

Statutory provisions prescribing shellfishing license fees were not constitutionally infirm. [40]

In an action for relief in the nature of certiorari, the issue of the adoption and applicability of a certain town by-law, not having been raised in the trial court, was not open on appeal. [40-41]

---

[1]Joan B. Rose, Robert H. Hastings, Nancy L. Hastings, Stephen J. O'Connor, Donna A. O'Connor, Anthony M. Briana, and Robert Comacho.

[2]Denise E. Kelley.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 9, 1986.

On transfer to the Superior Court Department, the case was heard by *Gerald F. O'Neill, Jr.*, J.

*Leonard Rose* for the plaintiffs.

*Edward W. Kirk* for Denise E. Kelley.

*Frank K. Duffy, Jr.*, Town Counsel, for Board of Selectmen of Falmouth.

DREBEN, J. After the defendant Denise Kelley obtained an exclusive shellfish license over certain land in Falmouth, the plaintiffs, who had applied for such a license prior to Kelley's application, brought this action seeking declaratory relief and review in the nature of certiorari. A judge of the Superior Court, after a trial, made findings of fact and ruled, contrary to the plaintiffs' contentions, that: (1) the licensing statute, G. L. c. 130, § 57, does not require that the first qualified applicant be granted the license; (2) that the applicable renewal provision, § 58, as in effect prior to St. 1986, c. 692, which allowed renewal of a shellfish license for a period not exceeding fifteen years, did not, as matter of law, preclude the selectmen from awarding the license to Kelley, the daughter of the former licensees; and (3) that the license fees authorized by statute were not unconstitutionally inadequate.

On appeal, the plaintiffs challenge each of these rulings and claim, in addition, that a provision of the Falmouth by-laws barred the award of the license to Kelley. We affirm the judgment.

In a certiorari action a court is to correct only "substantial errors of law apparent on the record adversely affecting material rights." *Murray* v. *Second Dist. Ct. of E. Middlesex*, 389 Mass. 508, 511 (1983).[3] The record of the selectmen's

---

[3]We need not be detained by the request for declaratory relief, see *Konstantopoulos* v. *Whately*, 384 Mass. 123, 129 (1981) (declaratory relief not a substitute remedy to review the merits of a discretionary decision made by licensing authorities), as the judge recognized that he should treat the complaint as one for review in the nature of certiorari, noting that the "vehicle of appeal is not essential to the decision of the court." See *Newbury Jr. College* v. *Brookline*, 19 Mass. App. Ct. 197, 201 (1985).

proceedings, that is, a transcription of the tape of the hearings or the minutes, was not presented to the Superior Court. While the plaintiffs repeatedly state that the selectmen acted without making findings, in the absence of a record of the selectmen's proceedings, we do not know, as assumed by the dissent, that the reasoning of the selectmen was not made evident to the parties. Moreover, the plaintiffs' attack is not addressed to the selectmen's failure to explain their choice among applicants, but rather the plaintiffs claim that as the first qualified applicants they are entitled to the license as matter of law.[4] In the absence of the inclusion by the plaintiffs of the record of the selectmen's proceedings, we consider the question discussed by the dissent as not raised in this appeal.

---

[4]The plaintiffs' approach that they are entitled to the license as matter of law appears to reflect a tactical decision not to present to the Superior Court the relevant proceedings of the selectmen which would have permitted a broader review by the Superior Court and by this court.

The only explanation in the record before us given by the selectmen is contained in the license grant to Kelley. The introductory paragraph states that the selectmen unanimously voted to grant the license "based upon all evidence presented at the several public hearings. The Board finds that this applicant is sufficiently qualified in terms of knowledge and experience, to operate a shellfish grant in the best interest of the Town of Falmouth, its natural resources and its shellfish industry. . . ."

There is authority holding that a local licensing authority, which is given "a somewhat wide discretion" as to the issuing or withholding of licenses, is not required to justify its denial or to state the reasons for the denial. *Johnson Prod., Inc.* v. *City Council of Medford*, 353 Mass. 540, 543 (1968) (license to build and operate a "gasoline island"). *Bennett* v. *Aldermen of Chelsea*, 361 Mass. 802, 807 (1972) (two applicants applying for a license to use the same building as a garage or repair shop). There are, however, suggestions in recent cases that reasons should be given. See *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. 296, 304 (1985) ("where the board denies relief to the individual [denial of extra hours to remain open], it would do well to state its reasons at or near the time of decision"). Cf. *Caswell* v. *Licensing Commn. for Brockton*, 387 Mass. 864, 876-878 (1983)(remand where appellate court could not determine whether the mistaken interpretation by the chairman of the commission was the basis of the decision); *Roslindale Motor Sales, Inc.* v. *Police Commr. of Boston*, 405 Mass. 79, 83 (1989) (remand for reasons for denial of a renewal of a license [not a certiorari action]).

The plaintiffs also did not include the transcript of the trial in the Superior Court in the record on appeal.[5] They do not urge that the judge's findings are incorrect, and, indeed, rely heavily on his assumption that they were qualified to obtain a license.

1. *First come, first served.* The plaintiffs' claim is that, unless the selectmen make certain negative findings, they must award the license to the first qualified applicant. More particularly, they claim that the selectmen's concerns must be limited to three matters set forth in § 57, "namely, (a) whether there would be a substantially adverse effect on natural shellfish resources of the town, (b) whether there would be any impairment of the private rights of any person, or (c) whether there would be material obstruction of navigable waters."[6] The plaintiffs urge that, because the "[s]electmen arbitrarily allowed the public hearings to become hearings on the factual issue of which of the applicants should have the . . . license, rather than the issue of whether any of the concerns mentioned in Chapter 130, § 57, were present," the judgment must be reversed. The public interest involved is defined by the plaintiffs in negative terms; they claim the selectmen could not legally weigh the relative qualifications among applicants, and, in the absence of findings as to the negative factors mentioned in § 57, the selectmen had no option but to award the license to the first qualified applicant.

The plaintiffs also argue that, because there are no statutory or regulatory criteria[7] established for the granting of a shellfish license, and because the benefits accruing from the grant are not required to be shared with the town, "the only proper way to award a new shellfish grant license [is] to issue it to the first qualified applicant."

A review of the applicable sections of G. L. c. 130 refutes the plaintiffs' argument that the selectmen are to grant the

---

[5]The Superior Court docket entries refer to the plaintiffs' certificate that no transcript was ordered.

[6]Sections 57 and 60 of G. L. c. 130 are reproduced in the appendix to this opinion.

[7]Other than the negative ones for denying a license discussed earlier.

license on a first come, first served basis. The director of the
division of marine fisheries is required by § 20, as inserted
by St. 1941, c. 598, § 1, to "assist and co-operate with
coastal cities and towns for the purpose of increasing the sup-
ply of shellfish and exterminating the enemies thereof . . .
and for this purpose may expend such sums as may be appro-
priated therefor . . . ." The funds are to be apportioned so as
to "effect the greatest amount of relief and assistance to the
shellfish industry." Section 20A, as inserted by St. 1974, c.
571, charges the director to assist coastal cities and towns in
establishing self-help "for the cultivation, propagation and
protection of shellfish." Section 54 authorizes cities and
towns to appropriate money for this purpose and also allows
them to protect the resources by prohibiting shellfishing for
limited periods.

The licensing provisions are contained in § 57 and require
public notice and a hearing as described in § 60. The cities
and towns are to issue licenses "upon such terms and condi-
tions and subject to such regulations as the city council or
selectmen issuing the same shall deem proper, but not so as
to impair the private rights of any person . . . ." Section 63
provides that the licensee shall have exclusive rights during
the term of any license or any renewal thereof, and § 65
mandates that the licensee report annually the total number
of bushels of each kind of shellfish planted, produced, or
marketed during the preceding year. If the total amount falls
below certain limits for any three consecutive years, the li-
cense is to be forfeited. Section 64 sets an annual fee of not
less than five nor more than twenty-five dollars per acre.

The thrust of the statutory scheme is to encourage the pro-
duction of shellfish and to protect an industry, which, as is
apparent from the provisions, the Legislature deems requires
assistance. Nothing in the statute suggests that the first per-
son seeking a license should prevail. To the contrary, the
goals of the legislation, buttressed by the requirement of
public notice and a hearing, indicate that the local board is
to determine which applicant, if there are several, can best
achieve the town's and the State's purposes. Contrary to the

plaintiffs' suggestion that the selectmen are limited, "the fact that a statute empowering a given administrative agency does not contain 'narrow and objective criteria,' but rather refers to a broad standard, tends to indicate that judicial review . . . is limited to a search for 'error of law or abuse of discretion, as measured by the arbitrary or capricious test.'" *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. 296, 300 (1985), quoting from *Caswell* v. *Licensing Commn. for Brockton*, 387 Mass. 864, 868 (1983).

Under the "arbitrary and capricious" standard, the burden is on a plaintiff to show that the challenged action is not related to the purposes of the legislation authorizing licenses. See *Forsyth Sch. for Dental Hygienists* v. *Board of Registration in Dentistry*, 404 Mass. 211, 218 (1989). There is no hint in the record before us suggesting that the selectmen's action was capricious or arbitrary in awarding the license to the adult daughter of seasoned and experienced shellfish operators. Compare *Yerardi's Moody St. Restaurant & Lounge* v. *Selectmen of Randolph*, 19 Mass. App. Ct. at 301. In their letter of opposition to any favorable action on the application of Kelley for a license, the plaintiffs stated that their application was made on behalf of a maritime lawyer, a publisher, a teacher, and three engineers. The letter acknowledged that Kelley's stated intention was to operate the grant with her parents' help, that at the hearings before the selectmen there were concerns that the plaintiffs would not be as successful as the Kelleys had been, and that some persons opposed giving the license to the plaintiffs because they believed the plaintiffs lacked the knowledge and experience to run a shellfish operation. The record on this appeal does not indicate that any of the plaintiffs had experience in shellfish operations.

2. *Denise Kelley as alter ego of her parents.* At the time the selectmen awarded the license to Denise Kelley, the statute did not permit a renewal of a license for more than fifteen years. See § 58, as in effect prior to St. 1986, c. 692. Denise's parents originally had a license for ten years and

thereafter obtained a renewal for fifteen years. In the plaintiffs' view, Denise must be considered the alter ego of her parents as matter of law and is therefore barred from obtaining the license.[8] The statute imposes no such bar.

Several provisions of the statute, while not strictly applicable, show that there is no strong policy supporting the plaintiffs' contention and that the legislature now favors protecting the investment of licensees. Shortly after the grant to Denise Kelley, § 58 was changed to allow unlimited renewal terms by current licensees. See St. 1986, c. 692. In addition, § 57 provides, as it did at the time the license was awarded to Denise, that upon the death of a licensee the license continues in full force and effect for the balance of the unexpired term for the use of members of the immediate family of the deceased licensee. In any event, we see no reason of policy or otherwise to create a judicial gloss upon the statute that would, as matter of law, bar a child from applying for a license previously held by her parents.

3. *Challenge to fee.* The low statutory fees are consistent with the statute's purpose to encourage greater production of shellfish. Assuming that the plaintiffs have standing to raise the issue of fees, there is here no constitutional infirmity.

4. *Town by-law.* The plaintiffs claim that a 1922 by-law of the town precludes the selectmen from granting a license for more than five years or for an area in excess of two acres. Town counsel takes the position that, although the by-law was proposed, it was never adopted and that the compilation of town by-laws containing the provision is in error.

Recognizing that arguments not made before the trial court need not be considered on appeal, the plaintiffs claim they were unaware of the by-law because the by-law compilation was prepared by the town after the trial. Nothing explains why the plaintiffs failed to examine town records or to ask this court for leave to file a motion for a new trial in the

---

[8]The plaintiffs wisely make no factual claim that Denise was her parents' alter ego. Since we have neither the selectmen's minutes nor a transcript of the trial before the Superior Court, there is here no factual basis for such a claim.

trial court. In any event, the by-law was not before the trial judge, and we cannot take judicial notice of by-laws. *Perini Corp.* v. *Building Inspector of N. Andover*, 7 Mass. App. Ct. 72, 78 n.9 (1979).

Accordingly, we see no abuse of discretion in the judge's denial of relief in the nature of certiorari.

*Judgment affirmed.*

APPENDIX TO THE OPINION OF THE COURT.

Section 57, as amended through St. 1985, c. 339, provides as follows.

"The city council of a city or the selectmen of any town may, upon written application therefor and after public notice and hearing thereon as provided in section sixty, grant to any person a license for a period not exceeding ten years to plant, grow, and take shellfish and to plant cultch for the purpose of catching shellfish seed, in such city or town at all times of the year, in, upon or from a specific portion of flats or land under coastal waters, provided the division of marine fisheries shall, after inspection, certify that the license and operation thereunder would cause no substantial adverse effect on the natural shellfish resources of the town, and provided further, no license shall be issued for any area then or within two years prior thereto, closed for municipal cultivation under the provisions of section fifty-four. Licenses under this section shall be issued upon forms supplied by such cities and towns and upon such terms and conditions and subject to such regulations as the city council or selectmen issuing the same shall deem proper, but not so as to impair the private rights of any person or to materially obstruct navigable waters, and they shall describe by metes and bounds the waters, flats or creeks covered thereby.

"Any license issued under the provisions of this section shall, upon the death of the licensee, continue in full force and effect, subject to the same terms, conditions, and regulations imposed upon the original license, for the balance of the unexpired term, or one year whichever is longer, for the use of the members of the immediate family of the deceased licensee. For the purposes of this section, immediate family shall mean the spouse, son, daughter, mother, father, brother and sister of said deceased licensee.

"Nothing in this section shall be deemed to affect the validity, conditions, or terms of any license granted under corresponding provisions of earlier laws and in full force upon the effective date of this section."

Section 60, as inserted by St. 1941, c. 598, § 1, provides as follows.

"No license referred to in section fifty-seven shall be granted, transferred or renewed until after a public hearing, due notice of which has been posted in three or more public places, and published in a newspaper,

if any, published in the city or town where the territory described in the application is situated at least ten days before the time fixed for the hearing, stating the name and residence of the applicant or transferee, as the case may be, the date of the filing of the application for such license, transfer or renewal, and the location, area and description of said territory."

IRELAND, J. (dissenting). The plaintiffs point, albeit inartfully, to the failure of the selectmen to explain their decision as an integral part of their contention that the actions of the selectmen were arbitrary and capricious. Relief in the nature of certiorari will be granted, in the court's discretion, where "substantial errors of law apparent on the record adversely affecting material rights . . . which have resulted in manifest injustice to the plaintiff. . ." (citations omitted). *Murray* v. *Second Dist. Ct. of E. Middlesex,* 389 Mass. 508, 511 (1983). This is such a case. See *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph,* 19 Mass. App. Ct. 296, 300 (1985). Contrast *Chick's Constr. Co.* v. *Wachusett Regional High Sch. Dist. Sch. Comm.,* 343 Mass. 38, 41 (1961) (writ will not issue on formal or technical errors).

Conceding the obvious, that the plaintiffs did not possess a property interest in the shellfishing license enabling invocation of the due process clause of the Fourteenth Amendment to the United States Constitution, see *Roslindale Motor Sales, Inc.* v. *Police Commr. of Boston,* 405 Mass. 79, 82-83 (1989), I nonetheless would hold that principles of fundamental fairness dictate that a contemporaneous statement of reasons issue from a board of selectmen to support or explain a denial of a license application. Absent this, complaining parties are effectively denied redress by any meaningful judicial review. This entitlement is securely grounded both in this Commonwealth's common law and in the licensing statute at issue.

"In this Commonwealth the right to a hearing where government exerts power upon an individual in a matter of consequence has been related, on occasion, not strictly to the

Constitution, but to an ethic that pervades our legal system
. . . [and], where the board denies relief to the individual, it
would do well to state its reasons at or near the time of the
decision. This aids the board in reaching a correct result, be-
sides helping the court in the process of review, if that should
occur" (citations omitted). *Yerardi's Moody St. Restaurant
& Lounge, Inc.* v. *Selectmen of Randolph,* 19 Mass. App.
Ct. at 303-304. Thus, concluding that a statement of reasons
"permits the applicant to make a meaningful and focused ap-
peal," the Supreme Judicial Court has required a statement
of reason or reasons in the case of refusal to renew a license.
*Roslindale Motor Sales, Inc.* v. *Police Commr. of Boston,*
405 Mass. at 84. In my view, the right of any party to mean-
ingful judicial review is no less important for an original ap-
plicant for a license. "As matters now stand, the correctness
of the [board's] decision is essentially unreviewable. . . .
Thus, it is impossible to determine from the present record
whether that decision was based on [factors] which were ar-
bitrary, unreasonable or capricious . . . or whether the deci-
sion was reached after due consideration of the relevant fac-
tual issues." (citations omitted). *Foster from Gloucester, Inc.*
v. *City Council of Gloucester,* 10 Mass. App. Ct. 284, 295
(1980).

In addition, the Legislature requires that applicants for a
shellfish license be afforded a certain process — public notice
and hearing. G. L. c. 130, § 57. I read this mandate as a
legislative prescription that a board considering such a li-
cense provide due process in the nature of that which would
be warranted if constitutional due process rights were to at-
tach. See, e.g., *Konstantopoulos* v. *Whately,* 384 Mass. 123,
131 (1981) (where a statute provides for a hearing, it is fair
to imply "that the licensee is to be notified, and to have op-
portunity to be heard"); *Chongris* v. *Board of Appeals of
Andover,* 811 F.2d 36, 40-41 (1st Cir. 1987) (constitutionally
sufficient State procedures should include "availability of
meaningful judicial review"). Concluding that a statement of
reasons for a denial is not required, I believe, renders the
selectmen's decision effectively immune from judicial review

and, thus, the statutory requirement of notice and a hearing objectively meaningless.

I would reverse and remand this case to the Superior Court for return to the selectmen for a statement of reasons in support of the denial. See *Roslindale Motor Sales, Inc.* v. *Police Commr. of Boston*, 405 Mass. at 85.