Cratsley, John C., J.
INTRODUCTION
Pursuant to G.L.c. 30A, §14, the plaintiff Cadle Company (“Cadle”) seeks review of a December 10, 2003 decision by the Massachusetts Division of Banks (“the Division”) denying Cadle’s application for a license to operate the business of a collection agency pursuant to G.L.c. 93, §24B. This matter is before the court on the parties’ cross motions for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c) and Superior Court Standing Order 1-96. For the reasons discussed below, Cadle’s motion for judgment on the pleadings is DENIED and the Division’s cross motion for judgment on the pleadings is ALLOWED.
ADMINISTRATIVE RECORD
The following facts are contained in the administrative record.
Cadle is an Ohio corporation which was organized to purchase and manage loan portfolios. Cadle is wholly owned by Daniel Cadle, its President and Chief Executive Officer. Cadle is the servicing agent, manager, or general partner for numerous affiliates, providing collection services and purchasing loan portfolios for those affiliates. Two of Cadle’s affiliates are registered to conduct business in Massachusetts and operate here.
In March and early April of 2003, the Division received numerous formal complaints about Cadle from Massachusetts debtors, set forth in five letters from Attorney Jan Schlichtmann (“Schlichtmann”) on behalf of himself and approximately a dozen clients.[2] The Schlichtmann letters allege that Cadle has illegally operated as a collection agency without a license as required by Chapter 93, §24B and has committed unfair and fraudulent acts against the named debtors. The letters provide details concerning Cadle’s allegedly illegal actions with respect to named individuals. Several of the letters also state:
Secretary of State William Calvin, by letter dated February 26 to the Attorney General, a copy of which was forwarded to your office, concluded:
Cadle has engaged in collection activity on numerous accounts in Massachusetts for over ten years, including initiating lawsuits in both federal and state courts. In the course of that activity, the corporation and its attorneys have consistently maintained that the accounts were owned by Cadle. In fact, the accounts were not owned by them, but by related entities controlled by Daniel Cadle. By fraudulently maintaining that the accounts were owned by Cadle, the corporation was able to avoid Massachusetts laws pertaining to collection agencies.
Additionally, as these accounts were not owned by the corporation, they were not available as assets for counter claims and adverse court judgments to the victims of its predatory practices.
Letter from William Francis Galvin, Secretary of the Commonwealth to Attorney General Thomas Reilly, Esq. dated February 26, 2003.
The Schlichtmann letters request that the Division investigate Cadle’s practices.
On April 14, 2003, the Division sent Cadle a letter entitled, “Directive to Cease and Desist Unlicensed or Unauthorized Debt Collection Activities in the Commonwealth of Massachusetts.” The letter states that the Division had received information “relative to The Cadle Company’s debt collection activities in the Commonwealth of Massachusetts.” The letter notes that Cadle is not licensed as a debt collector under G.L.c. 93, §§24-28 and warns that engaging in debt collection in Massachusetts without a license is punishable by a fine of up to $500, imprisonment for not more than three months, or both. The letter concludes:
*690 You are hereby directed to immediately cease engaging in any unlicensed or unauthorized collection activity in Massachusetts until such time as you have been issued a license by the Commissioner of Banks to engage in the business of a collection agency in the Commonwealth or otherwise satisfactorily established that The Cadle Company is exempt from the licensing requirements of General Laws chapter 93, section 24. (Emphasis in original.)
In May and June of 2003, the Division received additional formal complaints against Cadle set forth in three letters from Attorney Schlichtmann on behalf of himself and seven Massachusetts debtors. The letters allege that Cadle has illegally operated as a collection agency without a license as required by Chapter 93, §24B and in violation of the April 14 Cease and Desist Order, and has committed unfair and fraudulent acts against the named debtors. The letters provide details concerning Cadle’s allegedly illegal actions with respect to the named individuals and request that the Division investigate and institute enforcement action against Cadle.
On July 10, 2003, Cadle applied to the Division for a license to operate the business of a collection agency pursuant to G.L.c. 93, §§24, 24B. Cadle’s application included two years of audited financial statements which were prepared by certified public accountant Hill, Barth & King, LLC for Cadle’s Board of Directors. The audited statement for the year ending December 31, 2001 lists Cadle’s total assets as $14,507,779, with $13,296,018 of this amount described as “due from affiliates.” The 2001 audited statement lists contingencies of $9,018,578 as co-borrower of affiliate obligations and $22,705,590 as guarantor of affiliate obligations. Similarly, the audited statement for the year ending December 31, 2002 lists Cadle’s total assets as $12,583,883, with $11,970,615 of this amount described as “due from affiliates.” The 2002 audited statement lists contingencies of $9,739,835 as co-borrower of affiliate obligations and $44,798,400 as guarantor of affiliate obligations. In reviewing Cadle’s audited financial statements, the Division subtracted the asset “due from affiliates” from the stated net worth.
Cadle’s application disclosed that the Secretary of the Commonwealth denied Cadle’s application to register as a foreign corporation, and that on August 31, 1998, the Comptroller of the Currency denied Cadle’s notice of change of control of Daniel Cadle for Malta National Bank in Ohio. Cadle’s application also disclosed that one of its affiliates was the subject of regulatory action by the Connecticut Department of Environmental Protection on Januaiy 5, 2001 and was fined $2,100,000 for violating a pollution abatement order. In addition, the Connecticut Department of Environmental Protection obtained an abatement order against a different Cadle affiliate regarding a separate location. Cadle’s application disclosed that on May 10, 1994, Daniel Cadle was found guilty of a misdemeanor in Ohio Municipal Court for violating an ordinance relating to underground storage tanks and sentenced to a fine, costs, and supervised removal of the tanks. Cadle’s application also disclosed two pending felony charges in Ohio against Daniel Cadle for complicity in open dumping. Finally, Cadle’s application included an addendum listing 26 pending lawsuits against Cadle. In addition to routine contractual claims, a few of the suits’allege bad faith or fraudulent conduct by Cadle and violation of consumer protection statutes. One Texas suit resulted in a contempt judgment against Cadle and Daniel Cadle for failure to comply with two orders to turn over company assets to pay a judgment.
In weighing Cadle’s application, the Division considered the eight Schlichtmann letters described above. In addition, the Division considered two letters from a state representative opining that several of her constituents had been victimized by Cadle and urging the denial of the application. The Division did not hold a hearing or take any evidence. In a written decision dated December 10, 2003, the Division denied Cadle’s license application. The Division found:
(a) The audited financial statements for [Cadle] as of December 31, 2002 and 2001 indicate an adjusted net worth of ($10,924,122) and ($12,464,225), respectively. Furthermore, as manager or general partner of its affiliates, [Cadle] is the co-borrower or guar antor on certain payable obligations of these affiliates. As of December 31,2002, [Cadle] is co-borrower of $9,739,835 and guarantor of $44,798,400. The financial statements also indicate that [Cadle] has accrued $450,000 for estimated claims and settlements related to litigation.
(b) The Division is in receipt of numerous complaints from Massachusetts’ [sic] debtors regarding [Cadle]’s debt collection activities. These complaints raise serious questions regarding [Cadle]’s debt collection practices which, if true, would constitute violations of 209 CMR 18.00. Moreover, a collection letter submitted in support of one of these complaints indicate [sic] that [Cadle] continued to operate in Massachusetts in violation of the Division’s April 14, 2003 Cease Order.
(c) The license application contains several questions relating to whether the applicant or any of its parent companies, subsidiaries, affiliates, senior officers, directors or other principals have been the subject of regulatory action, had a license denied, suspended or revoked, or been the subject of any criminal prosecution which resulted in a finding other than “not guilty.” In response to these questions, [Cadle] indicated that: (1) In 2001, the Connecticut Department of Environmental Protection (DEP) obtained a judgment of $2,100,000 against Cadle Properties of CT, Inc., for violation of a DEP pollution abatement order; (2) In 1998, the Office *691 of the Comptroller of the Currency denied a Notice of Change of Control filed by Daniel C. Cadle with respect to Malta National Bank; (3) In 1994, Daniel C. Cadle was found guilty of violating Ohio codified ordinances 381.04(d) and 383.28(b), for failing to remove underground storage tanks; and (4) Daniel C. Cadle is the defendant in a pending criminal proceeding in Ohio for “Complicity, O.R.C. 2923.03 (open dumping 3734.03),” a third degree felony.
(d) In response to Question #27 on the license application which requests a list of any litigation pending against the applicant, [Cadle] submitted a twenty-eight page addendum identifying 26 separate lawsuits. Although the nature of this litigation varies widely, several suits allege violations of the Fair Debt Collection Practices Act, state consumer protection laws, and fraud. One of these matters, which has been unsuccessfully appealed to the Texas Supreme Court and which will now apparently be pursued in U.S. District Court, involves a contempt judgment and penalties against Daniel C. Cadle and [Cadle] for failing to comply with a court order to turn over company assets to pay a judgment. Daniel C. Cadle and [Cadle] were fined $461,000, and Daniel C. Cadle was sentenced to 180 days imprisonment, which has not yet been served.
A.R. Vol. IX, pp. 3012-14. The Division concluded that after subtracting receivables, a disallowable asset, Cadle showed a significant negative net worth. The Division also concluded that although Cadle had substantial contingent liabilities as co-borrower or guarantor, its application “provides no comment on whether these contingent liabilities will affect the financial stability of [Cadle].” The Division stated that it was concerned with Cadle’s pattern of violating regulatory and judicial orders, and noted:
in spite of having been ordered by the Division to cease operations in Massachusetts, the complaints filed by Massachusetts consumers indicate that [Cadle] has continued its debt collection operations. The submitted summary of litigation, much of it involving appeals of lower court judgments, have raised questions about the general business and debt collection practices of [Cadle] its affiliates, and Daniel C. Cadle.
Accordingly, the Division concluded that Cadle’s reputation, integrity and net worth were insufficient and do not warrant the belief that it would operate a collection business honestly. The Division therefore denied Cadle’s license application. A.R. Vol. IX, pp. 3012-14.
On January 8, 2004, Cadle filed this action.[3] Count III of the complaint seeks judicial review of the Division’s denial of a license pursuant to G.L.c. 30A, §14. Cadle asks this Court to grant it a collection agency license or, in the alternative, order the Division to give Cadle the opportunity to be heard on its application at a hearing.
DISCUSSION
Judicial review of an agency decision is confined to the administrative record. G.L.c. 30A, §§14(4), 14(5) (2000); Cohen v. Board of Registration in Pharmacy, 350 Mass. 246, 253 (1966); City of Boston v. Outdoor Adver. Bd., 41 Mass.App.Ct. 775, 776 (1996). The party appealing an administrative decision bears the burden of demonstrating that the decision is invalid. Fisch v. Board of Registration in Med., 437 Mass. 128, 131 (2002); Bagley v. Contributory Retirement Appeal Bd., 397 Mass. 255, 258 (1986). In reviewing an agency decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and statutorily conferred discretion. G.L.c. 30A, §14(7); Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992); Bartlett v. Contributory Retirement Appeal Bd., 6 Mass.App.Ct. 948, 949 (1978). The court may set aside an agency’s decision only if it is legally erroneous, procedurally defective, unsupported by substantial evidence, or arbitrary and capricious. Weinberg v. Board of Registration in Med., 443 Mass. 679, 685 (2005).
Failure to Provide a Hearing
Cadle first contends that the Division’s decision is invalid because the Division’s consideration of its license application was an adjudicatory proceeding in which Cadle was entitled to a hearing. Pursuant to G.L.c. 30A, §1(1), an adjudicatory proceeding is:
a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing.
Where a proceeding is adjudicatory, it must comply with the requirements of G.L.c. 30A, §§10 and 11. Madera v. Secretary of the Executive Office of Communities & Develop., 418 Mass. 452, 458 (1994); Forsyth Sch. for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 214 (1989).
It is clear that the Division is an “agency” for purposes of Chapter 30A and that Cadle is a specifically named person whose legal rights or privileges have been determined by the Division. However, the General Laws do not confer a right to a hearing upon applicants such as Cadle. Chapter 30A, Section 13 does not establish uniform minimum standards for the initial issuance of a license by a state agency. Rather, §13 leaves the matter of the issuance of licenses to the provisions of specific statutes and the rules and regulations validly promulgated thereunder. See Alexander Celia, Administrative Law and Practice §844, at 202 (1986 & Supp. 2006). Cf. G.L.c. 30A, §13 (requiring an opportunity for a hearing when agency seeks to revoke or refuse to renew any license).
*692 The business of debt collection is governed by G.L.c. 93, §§24-28. At the time of Cadle’s application, Section 24B provided in relevant part:
The commissioner may require such financial statements and references of all applicants for a license as he deems necessary and may make an investigation or cause an independent investigation to be made concerning the applicant’s reputation, integrity and net worth.
Section 24B made no mention of a hearing in connection with the application for a license. In contrast, §24C, which governed the suspension or revocation of a debt collection license, provided that “the commissioner may, after notice and hearing pursuant to the provisions of chapter 30A, revoke or suspend [a] license for such period as he may deem proper. ” Accordingly, Cadle was not entitled to a hearing under the General Laws in either July of 2003, when it filed its application, or December of 2003, when the Division denied the application.[4]
The question thus becomes whether Cadle had a “property” right in a favorable decision sufficient to invoke the right to a hearing under the due process provisions of the Fourteenth Amendment to the United States Constitution, arts. 11 and 12 of the Massachusetts Declaration of Rights, and G.L.c. 30A, §§§1, 10 and 11. See Forsyth Sch. for Dental Hygienists v. Board of Registration in Dentistry,, 404 Mass. at 214; General Chem. Corp. v. Department of Envtl. Quality Eng’g, 19 Mass.App.Ct. 287, 290, rev. den., 394 Mass. 1103 (1985). To have a constitutional property interest in a license, an applicant must have a legitimate claim of entitlement to it. Roslindale Motor Sales, Inc. v. Police Comm’r of Boston, 405 Mass. 79, 82 (1989). The more discretion a licensing authority is granted by the governing statute, the less likely it is that citizens have a constitutionally protected property interest in obtaining a license. Id. at 83. An applicant generally has a property interest in a license if the license is routinely granted to all applicants meeting objective or easily judged criteria. Welch v. Paicos, 66 F.Sup.2d 138, 164-65 (D.Mass. 1999). See also Madera v. Secretary of the Executive Office of Communities & Dev., 418 Mass. at 458 (where state or federal law entitles individual meeting certain criteria to receipt of a state or federally funded benefit, individual has property interest in the benefit). However, when a license is discretionary “or is conditioned on the weighing and comparison of complex or subjective criteria, a property interest cannot attach until after the license is granted.” Welch v. Paicos, 66 F.Sup.2d at 165.
Here, Chapter 93, Section 24B permitted but did not require the commissioner to grant a collection agency license after investigating the applicant’s “reputation, integrity and net worth." The statute confers broad discretion on the commissioner in approving or rejecting applications, which negates any claim of entitlement that would mandate the protection of the due process clause. See Roslindale Motor Sales, Inc. v. Police Comm’r of Boston, 405 Mass. at 82 (no hearing required before denying application to renew used motor vehicle sales license, where statute provides that commissioner “may” grant a license to a “proper” person); Commonwealth v. Gordon, 354 Mass. 722, 726 (1968) (no constitutional right to a hearing where licensing statute provides that director “may” grant a license for hawking and peddling under G.L.c. 101, §22 after police chief certifies that applicant is “of good repute for morals and integrity”). See also Papa Gino’s of Am., Inc. v. Taurasi, 616 F.Sup. 77, 79 (1984), aff'd, 760 F.2d 251 (1st Cir. 1985) (applicant had no property interest in victualler’s license under G.L.c. 140, §2 where licensing statute provided that licensing authority “may” grant license in the public good). Because the statutory criteria of reputation and integrity are subjective, rather than objective, an applicant under G.L.c. 93, §24B has no constitutionally protected property interest in obtaining a collection agency license.[5]
Cadle cites to Milligan v. Board of Registration in Pharmacy, 348 Mass. 491 (1965), for the proposition that due process requires a hearing where denial of a license affects an applicant’s right to engage in a lawful occupation. See also ForsythSch. for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass, at 214 (noting that right to engage in lawful occupation is an aspect of the property interests that may be constitutionally protected); Langlitz v. Board of Registration of Chiropractors, 396 Mass. 374, 376 (1985) (noting that fundamental fairness requires that decisions concerning licenses to engage in lawful occupation be made after opportunity for hearing). However, the licenses at issue in Milligan and similar cases are professional licenses for occupations for which the applicants have undergone significant training. See, e.g., Mariner v. Board of Registration of Chiropractors, 358 Mass. 13, 16 (1970) (hearing constitutionally required where applicant to be registered as a chiropractor rejected for failing practical test, because decision denied applicant opportunity to engage in the calling for which he had been trained); Milligan v. Board of Registration in Pharmacy, 348 Mass. at 499-501 (hearing constitutionally required before denying a qualified pharmacist a license to operate a pharmacy at a particular location, as decision impacted his right to engage in the occupation in which he trained). See also Forsyth Sch. for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. at 215 (discussing professional licenses). In contrast, where the Commonwealth has a strong interest in regulating an occupation in order to protect the public and where that occupation is not one in which the individual affected has a substantial vested interest, the licensing procedure is wholly discretionary and there is no constitutional right to a hearing. Roslindale Motor Sales, Inc. v. Police Comm’r of Boston, 405 Mass. at 83 (no right to a hearing on application for license to deal in used motor vehicles); *693 Commonwealth v. Gordon, 354 Mass. 722, 726 (1968) (no constitutional right to hearing on application for hawking and peddling license). A license to operate a collection agency under Chapter 93 is not a professional license for an occupation involving extensive education or training, so as to give practitioners a substantial vested interest therein. Thus, this Court concludes that Cadle was not entitled to a hearing on its license application under the due process provisions of the Fourteenth Amendment to the United States Constitution, arts. 11 and 12 of the Massachusetts Declaration of Rights, and G.L.c. 30A, §§§1, 10 and 11.
Substantial Evidence
Cadle next argues that the Division’s decision denying its application for a collection agency license is unsupported by substantial evidence.
Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion, taking into account whatever in the record detracts from its weight. G.L.c. 30A, §14(7); Boston Gas Co. v. Department of Telecommunications and Energy, 436 Mass. 233, 237 (2002); School Comm. of Norton v. MCAD, 63 Mass.App.Ct. 839, 843 (2005); Silvia v. Sec. Div., 61 Mass.App.Ct. 350, 358 (2004). In evaluating substantial evidence, the court must accord due weight to the experience, technical competence, and specialized knowledge of the agency, and must defer to the agency on questions of fact and reasonable inferences drawn from the record. Boston Gas Co. v. Department of Telecommunications and Energy, 436 Mass. at 237; Cobble v. Commissioner of the Dept. of Soc. Serv., 430 Mass. 385, 390 (1999). A court may not displace an agency’s choice between two fairly conflicting views, even though the court justifiably would have made a different choice if faced with the same set of facts de novo. Goldberg v. Board of Health of Granby, 444 Mass. 627, 638 (2005); Fisch v. Board of Registration in Medicine, 437 Mass. at 138.
Cadle’s basic argument is that the vast majority of the voluminous administrative record was submitted to the Division by Schlichtmann, an individual with a demonstrated bias against Cadle. An agency must rely on evidence bearing sufficient indicia of reliability that it has probative value. In the Matter of Segal, 430 Mass. 359, 365 (1999). The Division’s written decision is, in fact, based largely on evidence produced by Cadle in its license application. Such evidence can reasonably be deemed to be reliable. Accordingly, this argument lacks merit.
Cadle further contends that all four of the Division’s bases for denying the license application are unsupported by substantial evidence. Cadle argues that the Division’s conclusion that Cadle showed a significant negative net worth is unsupported by generally accepted accounting principles. Cadle’s financial reports for the year ending December 31, 2001 and the year ending December 31, 2002 show that almost all of Cadle’s assets are “due from affiliates.” The financial reports also show that Cadle, as manager or general partner of numerous affiliates, is a co-borrower or guarantor of substantial debt: in excess of $23 million in 2001 and $55 million in 2002. To the extent that Cadle complains that the Division’s subtraction of receivables violates generally accepted accounting principles, this Court must defer to the Division’s experience, technical competence, and specialized knowledge in evaluating an applicant’s net worth. See Automobile Insurers Bureau of Mass. v. Commissioner of Ins., 430 Mass. 285, 296 (1999) (court must defer to agency’s choice of methodology). Accordingly, after reviewing the Division’s analysis of Cadle’s documentation of its net worth, I find that there is substantial evidence in the record to support the Division’s conclusion that Cadle’s financial condition is a matter of concern.
Cadle next argues that the Division’s reliance on the Schlichtmann letters to deny the application was improper because the Division did not investigate the circumstances of each complaint against Cadle described by Schlichtmann. It was within the Division’s discretion and expertise to consider the existence of these complaints as relevant to Cadle’s reputation and integrity without investigating each complaint. Cadle also argues that the Division’s reference to the fact that Cadle continued to operate in Massachusetts in violation of the April 14, 2003 Cease Order is improper because of the content of an affidavit filed by Division Deputy Commissioner Bonita Irving in another matter. In that matter, the Division, through the affidavit of Irving, averred (1) that it has never investigated or determined that Cadle was in fact engaging in unlicensed collection activity and (2) that the letter it sent Cadle was merely a notice to comply with the statute as it may apply. This affidavit, however, was not before the Division at the time it considered Cadle’s license application. Judicial review of an agency decision is confined to the administrative record, and the substantial evidence standard of review goes to the reasonableness of what the agency decided on the basis of the evidence before it. G.L.c. 30A, §14(5); Roberts v. Southwestern Bell Mobile Systems, Inc., 429 Mass. 478, 498 (1999). Accordingly, this Court cannot consider the Irving affidavit.
Cadle further argues that the Division’s statement of concern with Cadle’s pattern of violating regulatory and judicial orders was unsupported by substantial evidence because all of the proceedings against Cadle cited by the Division involved environmental liability for which Cadle was not directly culpable, but was legally responsible as a result of its acquisition of property through foreclosure. Cadle’s brief attempts to explain and dismiss each of the regulatory proceedings as insignificant. This additional information, however, was not before the Division at the time it considered Cadle’s license application and this Court *694 cannot consider it. See G.L.c. 30A, §14(5); Roberts v. Southwestern Bell Mobile Systems, Inc., 429 Mass. at 498. Based on Cadle’s brief description of the actions against it, as found in the administrative record, reasonable minds might be concerned with Cadle’s pattern of violating regulatory and judicial orders. Thus, it was proper for the Division to consider this evidence in concluding that there was sufficient concern about Cadle’s reputation and integrity to deny a license.
Finally, Cadle argues that the Division’s reliance on the outstanding litigation against it was improper because the Division failed to recognize that the amount of litigation against Cadle is low compared to other debt collectors. Cadle contends that it has prevailed in most of the suits against it that were considered by the Division. Its brief details the status of several of the cases and comments on the underlying circumstances. As noted supra, however, judicial review of an agency decision is confined to the administrative record, and the substantial evidence standard tests only the reasonableness of what the agency did on the basis of the evidence before it. G.L.c. 30A, §14(5); Roberts v. Southwestern Bell Mobile Systems, Inc., 429 Mass. at 498. The list of outstanding litigation provided by Cadle as part of its application reveals that aside from routine contractual claims, a few of the suits allege bad faith or fraudulent conduct by Cadle and violation of consumer protection statutes. In addition, a Texas suit resulted in a contempt judgment against Cadle and its principal, Daniel Cadle, for failure to comply with two orders to turn over company assets to pay a judgment. The descriptions of the litigation against Cadle are indeed such as a reasonable mind might accept as adequate to support the conclusion that Cadle’s reputation and integrity are questionable. Accordingly, this Court concludes that the Division’s denial of Cadle’s license application was supported by substantial evidence found in the administrative record.
Arbitrary and Capricious
Finally, Cadle argues that the Division’s denial of its application was arbitrary and capricious. A decision is arbitrary and capricious when it lacks any rational explanation that reasonable persons might deem proper to support it. Teamsters Joint Council No. 10 v. Director of Dept. of Labor and Workforce, 447 Mass. 100, 106 (2006); Cambridge v. Civil Service Comm’n, 43 Mass.App.Ct. 300, 303, rev. den., 426 Mass. 1102 (1997). Arbitrary and capricious action is that taken without consideration and in disregard of facts and circumstances. Long v. Commissioner of Pub. Safety, 26 Mass.App.Ct. 61, 65 (1988). In addition, if an agency has acted for reasons that are extraneous to the statutory scheme based on some ad hoc agenda, it has acted arbitrarily because the basis for action is not uniform and is not predictable. Fieldstone Meadows Develop. Corp. v. Conservation Comm’n of Andover, 62 Mass.App.Ct. 265, 267 (2004); Fafard v. Conservation Comm’n of Reading, 41 Mass.App.Ct. 565, 568 (1996).
The Division’s denial of Cadle’s license application is not arbitrary and capricious insofar as it is based on the relevant statutory factors of reputation, integriiy, and net worth. The Division’s written decision is not irrational and has factual support in the administrative record. See Cherubino v. Board of Registration of Chiropractors, 403 Mass. 350, 359 (1988) (decision that is supported by substantial evidence is generally not arbitrary and capricious). Cf. Retirement Bd. of Somewille v. Contributory Retirement Appeal Bd. 38 Mass.App.Ct. 673, 677 (1995) (in unusual circumstance where agency’s decision contradicted its earlier interim decision on the same record without explanation, it was arbitrary and capricious despite being supported by substantial evidence). This Court is not persuaded that the Division abdicated its duly to consider the statutory factors of Cadle’s “reputation, integrity and net worth” or was biased by Schlichtmann’s opinion of Cadle. Accordingly, Cadle has failed to meet its heavy burden of demonstrating the invalidity of the Division’s denial of its license application.
ORDER
For the foregoing reasons, it is hereby ORDERED that The Cadle Company’s motion for judgment on the pleadings is DENIED and that the Division’s cross motion for judgment on the pleadings is ALLOWED. The December 10, 2003 decision of the Division is AFFIRMED.

Schlichtmann has been embroiled in personal litigation with Cadle for more than twelve years. He also represents numerous other individuals in litigation with Cadle. Cadle has filed a defamation suit against Schlichtmann in Essex Superior Court. OnFebruaiy 17, 2004, a Justice of this Court (Fahey, J.) allowed Schlichtmann to intervene as a defendant in this action.

Count I of the complaint sought a declaratory judgment that Cadle does not collect “for others” within the meaning of G.L.c. 93, §24 and therefore is not required to obtain a license to conduct its activities within the Commonwealth. Cadle voluntarily dismissed that count on May 13, 2004. Count II of the complaint sought a preliminaiy injunction allowing Cadle to pursue lawful activities in the Commonwealth while its declaratory judgment action is pending. On February 25, 2004, Cadle withdrew its motion for a preliminary injunction in open court.

The statute was substantially amended by St. 2003, c. 130, effective February 24, 2004. The statute in effect today also provides no right to a hearing on a license application. See G.L.c. 31, §§24B(a), 24G, 241 (2006).

The present §24B(a) gives the commission even broader discretion, stating that he may “reject an application for a license ... if he is not satisfied that the financial responsibility, character, reputation, integrity and general fitness of the applicant and of the owners, partners or members thereof, if the applicant be a partnership or association, and of the officers and directors, if the applicant be a corporation, are such as to command the confidence of the public and to warrant the belief that the business for which the application for a license is filed will be operated lawfully, honestly and fairly.”