COMMONWEALTH *vs.* JOHN HOOD.

SAME *vs.* HENRY COOK.

Suffolk.   March 9, 1903. — April 1, 1903.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Junk Dealer.   Words,* "Dealer."

Under R. L. c. 102, §§ 29–32, the keeper of a shop where old gold and silver are bought is required to have a license, although he does not sell the old gold and silver, but has it refined and manufactured into dental supplies, or sends it to the United States mint to be made into coin.   Such a person may be found to be a dealer in old metals within the meaning of the statute.

TWO COMPLAINTS, received and sworn to March 27, 1902, under R. L. c. 102, §§ 29–32, each for keeping a shop for the purchase, sale or barter of old metals and second hand articles without a license.

In the Superior Court both cases were tried before *Aiken*, J., who in each case ruled that the jury would be warranted in finding that the defendant was a dealer and in finding that the defendant was guilty.

The jury in each case returned a verdict of guilty; and the defendants alleged exceptions.

*D. L. Smith & C. G. Chick*, for the defendants.

*M. J. Sughrue*, First Assistant District Attorney for the Commonwealth, submitted a brief.

BARKER, J.   These were complaints for violation of the provisions of R. L. c. 102, §§ 29–32, concerning junk, old metals and second hand articles. Each complaint alleged that the defendant was the keeper of a shop for the purchase, sale and barter of old metals and second hand articles, not being duly licensed so to do.

In Hood's case the evidence was that he was a manufacturer and dealer in dental supplies, having a store at which he bought old gold and silver. None of this was sold by him in the condition in which he bought it, but it was all taken to his refinery and there manufactured into dental supplies, and then sold in that form to dentists in the regular course of business at the defendant's store.

In Cook's case the evidence was that he kept a place of business at which he purchased old gold and silver articles, all of which he sent to the United States Mint at Philadelphia, where they were refined and made into coin, which was returned to him less the expenses. None of the articles purchased by him were sold by him at his store or elsewhere, and the coin received from the mint was used in his business.

The principal objects of the statutory provisions cited are to make it possible that junk, old metals and second hand articles stolen or embezzled may be traced and restored to their owners, and that the speedy destruction of the identity of such articles may not make it impossible to convict the thief. Each of the defendants kept a shop for the purchase of old gold and silver articles, and each when he bought such articles immediately caused their identity to be destroyed, the one by melting them down in his refinery, and the other by sending them to the mint to be there refined and made into coin. The business carried on by each at his shop was within the mischief at which the statute was aimed.

Each defendant contends that the shopkeeper does not require a license unless he both buys and sells or barters the articles at his shop. . Looking at the language and purpose of the statute we think that one who keeps a shop for the purchase of old

metals must obtain a license although he neither sells nor barters there the articles which he buys. The words of § 29 are "dealers in and keepers of shops for the purchase, sale or barter of junk, old metals or second-hand articles." The keeper of every shop where old metals are bought by him deals there in such metals, and each of the defendants dealt in old gold and silver articles by purchasing them at their shops and sending them away to be refined.

Every such purchase was a "deal", and the defendants were traffickers or dealers in old gold and silver. The evidence that each kept a store where he was ready to make and did make transactions justified the refusals to give the rulings asked for and the rulings given that the jury would be warranted in finding that each defendant was a dealer and would be warranted in finding a verdict of guilty.

These considerations dispose of all the exceptions except the one taken by each defendant to the exclusion of evidence tending to prove the uniform custom of the police department of the city of Boston to issue licenses under R. L. c. 102, §§ 29–32, in a form which purports to certify that the licensee is licensed "as a dealer."

Licenses under the sections cited can have been issued only since January 1, 1902, while the provisions now embodied in those sections have been in force for many years in substantially the same form. Therefore the offer of proof was not of a contemporary construction of a new statute by an executive board charged with its administration. But if the offer had been to show that a similar form had been used uniformly since the original enactment of the statutory provisions in question, the evidence would have been inadmissible. It in no way tended to define the word "dealer" or the phrase "as a dealer in junk, old metals, or second hand articles."

*Exceptions overruled.*