COMMONWEALTH *vs.* WOLF SILVERMAN.

Hampden.    February 25, 1915. — April 1, 1915.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Junk Dealer.  License.  Words,* "Dealer."

One who sells to a licensed junk dealer junk and old metals on sixteen different dates within two months, but who keeps no shop in the city in which the sales are made, may be found to be a "dealer" in junk and old metals in that city within the meaning of R. L. c. 102, § 29, providing that such a dealer may be required by a city ordinance to be licensed.

In construing the word "dealer" in a statute or ordinance requiring dealers in certain articles to be licensed there would seem to be no valid distinction between one who sells and one who buys such articles.

COMPLAINT, received and sworn to in the Police Court of Holyoke on September 21, 1914, under R. L. c. 102, §§ 29–32, charging the defendant with being a dealer in and the keeper of a shop for the purchase, sale and barter of junk and old metals in the city of Holyoke without a license, the complaint containing three counts as described in the opinion.

In the Superior Court the defendant was tried before *Hamilton*, J., the facts as agreed to by the parties being stated in the opinion. The material portion of an ordinance of the city of Holyoke adopted under the provisions of § 29 of the statute was included in the facts agreed to. The jury returned the verdict "Guilty as dealer but not guilty as keeper of a shop," and at the request of the defendant the judge reported all questions of law arising upon the agreed facts for determination by this court. If the sales there referred to made the defendant a dealer within the meaning of § 29 of the statute, the verdict of guilty was to stand; otherwise, a verdict of not guilty was to be entered.

Section 29 of R. L. c. 102 is as follows:

"The mayor and aldermen of any city except Boston, and in Boston, the board of police, and the selectmen of any town, if ordinances or by-laws therefor have been adopted in such city or town, may license suitable persons to be dealers in and keepers of shops for the purchase, sale or barter of junk, old metals or second-hand articles, in such city or town, subject to the provisions of sections one hundred and eighty-six to one hundred and eighty-nine, inclusive, and may revoke such licenses at pleasure."

Section 1 of the ordinance of the city of Holyoke, which was made a part of the agreed facts and under which the complaint was brought, was as follows:

"No person shall be a dealer in or keeper of a shop for the purchase, sale or barter of junk, old metals or second-hand articles in this city, unless he is duly licensed therefor by the board of aldermen and shall exhibit his license when requested to do so."

The case was submitted on briefs.

*M. N. Slotnick*, for the defendant.

*C. P. Niles*, District Attorney, & *F. M. Myers*, for the Commonwealth.

CROSBY, J. The first count of the complaint charges the defendant with being a dealer in and keeper of a shop for the purchase, sale or barter of old metals, in Holyoke, without being duly licensed therefor by its board of aldermen.

The second count charges the same offence, except that it specifies sixteen different dates.

The third count alleges that the defendant was a keeper of a

shop for the purchase, sale and barter of junk, without being duly licensed therefor.

The report states that the defendant had not the license referred to in R. L. c. 102, § 29, during the year 1914, in Holyoke, but that he had such a license during that year in the town of South Hadley, in this Commonwealth.

The jury returned a verdict of "Guilty as dealer, but not guilty as keeper of a shop."

The parties agreed that on the dates set out in the second count of the complaint the defendant did sell junk and old metal in Holyoke to one Belsky, who was a licensed junk dealer in Holyoke; the only question then is whether the sales so made by the defendant constituted him a "dealer" within the meaning of § 29 above referred to.

Section 29 of the statute provides for the licensing of dealers in junk, old metals or second hand articles, and also for the licensing of those who are keepers of shops for the purchase, sale or barter of the same articles. The clear intent of the statute is to require dealers, as well as the keepers of shops, to be licensed for the purchase and sale of such articles. *State* v. *Cohen,* 73 N. H. 543. See also Sts. 1902, c. 187; 1910, cc. 193, 554.

It was not the purpose of the Legislature to prevent or curtail the business of dealing in junk and old metals, but to regulate the business by causing the dealers therein, and those who keep shops for the carrying on of such business, to be licensed. The principal objects of the statute are to determine what persons shall be engaged in the business and to make it possible that junk, old metals and second hand articles stolen may be traced and restored to their owners, and that the thief may be detected and convicted.

We are of opinion that, having in mind the mischief at which the statute was aimed, one who sells junk and old metals on sixteen different dates within two months, as is admitted was done by this defendant, may be found to be a "dealer" within the meaning of the statute.

The keeper of a shop under the statute may be required to keep among other things a record of every purchase and a description thereof, the date of such purchase and the name and residence of the person from whom such purchases are made. On the other

hand, one who is simply a dealer cannot be required to keep any record of purchases or sales, the statute providing only that suitable persons shall be so licensed as dealers.

Independently of the fact that the defendant was licensed as a junk dealer in South Hadley, we are of opinion that the sales made by him were sufficient to warrant the conviction under the statute. In *Commonwealth* v. *Hood,* 183 Mass. 196, it was held that one who kept a shop where old gold and silver was bought was required to have a license under the statute and could be found to be a dealer although no sales were made.

In construing the meaning of the word "dealer" there would seem to be no valid distinction in the statute between one who sells and one who buys such articles. As was said by this court in *Commonwealth* v. *Hood, supra,* "Every such purchase was a 'deal,' and the defendants were traffickers or dealers in old gold and silver."

In *McKenzie* v. *Day,* [1893] 1 Q. B. 289, Lord Coleridge, C. J, in construing a statute in reference to illegal dealing in intoxicating liquors, said: "The plain meaning of the word 'deal' unquestionably extends to buying as well as selling; there must be two parties to what is called a 'deal;' a man cannot deal with himself; there must be some one else for him to deal with."

In *Nelson* v. *State,* 111 Wis. 394, 399, it was held that "the act of setting out liquor for another to drink at the request of a third person is a dealing with such other as clearly as giving or selling it to him." *State* v. *Silverman,* 75 N. H. 50. 13 Cyc. 285, 286, 287, and notes.

A dealer in intoxicating liquors "is one who makes successive sales as a business." *Overall* v. *Bezeau,* 37 Mich. 506.

We are of opinion that the conclusion which we have reached is consistent with the language of the statute and that a contrary interpretation would militate against its sensible and reasonable construction, having in mind the evils which it was intended to prevent. It reasonably might be found from the facts reported that the defendant was a dealer and consequently was guilty of the offence charged, as he had not been duly licensed as such dealer.

*Verdict of guilty to stand.*