GOLDIE'S SALVAGE, INC. *vs.* BOARD OF SELECTMEN OF
WALPOLE & another.[1]

No. 89-P-1230.

Norfolk. March 15, 1991. - January 6, 1992.

Present: KASS, GILLERMAN, & GREENBERG, JJ.

*Junk Dealer. License. Municipal Corporations*, Licensing board. *Administrative Law*, Hearing, Judicial review. *Practice, Civil*, Action in nature of certiorari.

The standard of judicial review applicable to a municipal licensing authority's denial of applications for renewal of licenses issued under G. L. c. 140, § 54, was whether the record shows an "error of law or abuse, of discretion, as measured by the 'arbitrary and capricious' test" [731]; and the standard of judicial review applicable to the denial of applications for renewal of licenses issued under G. L. c. 140, § 59, was whether the decision is based upon an error of law or is unsupported by substantial evidence [731-732].

A Superior Court judge correctly determined that there was no error of law or abuse of discretion in the refusal of a board of selectmen to issue licenses under G. L. c. 140, § 54, and that the board's refusal to issue licenses under G. L. c. 140, § 59, was supported by substantial evidence untainted by any error of law, where the record of proceedings before the selectmen demonstrated that the licensee had not complied with the provisions of G. L. c. 140, §§ 54A and 59A, requiring the licensee to screen the place of business from view with fences or natural barriers. [733].

There was no merit to the claim of a licensee that it should have been permitted the opportunity to obtain discovery and to introduce evidence extrinsic to the record under review in proceedings brought under G. L. c. 249, § 4, and G. L. c. 140, § 59, to review the denials of license renewal applications. [733-734]

CIVIL ACTION commenced in the Superior Court Department on June 6, 1989.

The case was heard by *Roger J. Donahue*, J., on a motion for summary judgment.

---

[1]The town of Walpole.

*W. P. Colin Smith, Jr.*, for the plaintiff.

*Everett J. Marder*, Town Counsel, for the defendants.

GILLERMAN, J. The selectmen of Walpole, acting as the licensing authority of the town, voted on May 30, 1989, to deny the application for renewal of four licenses previously held by the plaintiff (Goldie's): a junk dealer's license and a junk collector's license, both issued under G. L. c. 140, § 54; a class 2 used car dealer's license and a class 3 motor vehicle junk license, both issued under G. L. c. 140, § 59.[2]

Goldie's complaint in the Superior Court, filed on June 6, 1989, sought injunctive relief and judicial review of the proceedings before the selectmen, citing G. L. c. 249, § 4 (relief in the nature of certiorari), and G. L. c. 140, § 59 (granting judicial review to any person aggrieved by a decision of a licensing board refusing to grant a license under § 59).[3] After a hearing, the application for a preliminary injunction was denied, and the judge ordered a hearing, which he set down for July 13, 1989, on a proposed, but unfiled, motion for summary judgment in favor of the defendants.

On June 29, 1989, the selectmen filed a motion for summary judgment supported by the affidavit of the keeper of the records of the selectmen. The affidavit incorporated (i) a copy of a letter dated January 18, 1989, notifying Goldie's of a hearing on February 7, 1989, on its application for the re-

---

[2]General Laws c. 140, § 54, provides that licenses thereunder may be issued to "suitable persons." General Laws c. 140, § 58, as appearing in St. 1987, c. 289, § 2, provides that a class 2 license may be granted under § 59 to "[a]ny person whose principal business is the buying or selling of second hand motor vehicles. . . ." A class 3 license may be granted to "[a]ny person whose principal business is the buying of second hand motor vehicles for the purpose of remodeling, taking apart or rebuilding the same, or the buying or selling of parts of second hand motor vehicles or tires, or the assembling of second hand motor vehicle parts. . . ." G. L. c. 140, § 58. Section 59 provides that no license described in § 58 shall be granted unless the local licensing board is "satisfied from an investigation of the facts stated in the application and any other information which they may require of the applicant, that he is a proper person to engage in the business . . . and that he has available a place of business suitable for the purpose." G. L. c. 140, § 59, as inserted by St. 1948, c. 181, § 2.

[3]Goldie's also sought relief under G. L. c. 231A. Our decision makes consideration of that claim unnecessary.

newal of its class 2 and class 3 licenses; (ii) the minutes of
the meeting of the selectmen dated February 7, 1989 (recit-
ing that "this meeting was [called] because of the concerns
of the Conservation Commission, the Board of Appeals and
the Fire Chief," but that no conclusions were reached and no
vote was taken); (iii) the minutes of the meeting of the
selectmen dated March 14, 1989 (reciting that the selectmen
voted to hold a hearing on Goldie's class 2 and class 3 license
applications); (iv) a copy of a letter dated April 13, 1989,
notifying Goldie's that there would be a hearing on the class
2 and class 3 license applications on May 9, 1989, that the
selectmen intended to consider seven issues, which the letter
identified, and that Goldie's might be represented by counsel
and might present and cross-examine witnesses; and (v) a
copy of a letter dated June 1, 1989, in which the selectmen
notified Goldie's that the board, following the hearing held
May 9, 1989, had voted to deny Goldie's applications for the
renewal of its § 59 class 2 and class 3 licenses as well as
Goldie's applications, filed one day after the May 9 hearing,
for the renewal of its § 54 junk dealer and junk collector
licenses. The selectmen cited six reasons as the basis of their
decision, which we set out in the margin,[4] and added that
Goldie's place of business was not suitable for its continued
use as a class 2 and class 3 licensed establishment. Although
the transcript of the hearing held on May 9 was not attached
to the motion for summary judgment or to the accompanying
affidavit, it was in fact before the judge without objection

[4]"(a) You have been cited for stockpiling in the wetlands and violating
the one hundred foot buffer zone;

"(b) You have knocked down the natural barrier at one point of your
perimeter in violation of the requirements of G. L. c. 140, Section[s] 54A
and 59A;

"(c) You have intensified the use of the land in violation of the zoning
by-laws, and the site plan approval requirement;

"(d) You have allowed old rubber automobile and truck tires to spill
over into the wetlands on the site;

"(e) You have illegally filled wetlands on the site; and

"(f) In general, you have disregarded enforcement orders from the Con-
servation Commission and have failed to respond to requests for informa-
tion from the Board of Selectmen."

from Goldie's, and he considered the transcript in reaching his decision.

On July 12, 1989, one day before the hearing on the selectmen's motion for summary judgment, Goldie's counsel filed an affidavit under Mass.R.Civ.P. 56(f), 365 Mass. 824 (1974), seeking the opportunity to obtain answers to interrogatories, responses to document requests, and deposition testimony of various persons on the basis of which counsel, according to his affidavit, expected to be able to establish that certain testimony at the May 9 hearing, and the six reasons assigned by the town, were not accurate and that there were genuine issues of material fact which needed to be tried. The judge, in allowing summary judgment and denying Goldie's the requested continuance, cited the absence of any vested right to the renewal of the licenses, the broad discretion of the town in denying licenses, the adequacy of the reasons set forth by the town, and the absence of any arbitrary or capricious act.

1. *Statutory background.* The statute governing junk collector and junk dealer licenses, G. L. c. 140, § 54, differs markedly from G. L. c. 140, § 58, governing class 2 and 3 licenses for dealing in used automobiles and their parts. Section 54 authorizes cities and towns to adopt an ordinance or by-law which "may provide for the licensing . . . by the selectmen . . . of suitable persons to be collectors of, [or] dealers in . . . junk," and the selectmen may make such additional regulations and restrictions as "shall be expressed in all licenses." The license may be "revoked at pleasure," and, in any event, expires on May first of each year. See G. L. c. 140, § 202. There is no provision in § 54 for any hearing on an application for a § 54 license, and there is no provision for any judicial review of action taken by the licensing authority with respect to a § 54 license. Article XVI of the Walpole by-laws provides that the selectmen "may license suitable persons" as junk dealers and junk collectors. The by-law, like § 54, contains no provision for any hearing or for judicial review.

Section 59, on the other hand, provides that the licensing authorities of cities and towns, in their discretion, "may grant"[5] a license to a "proper person" to engage in the motor vehicle business (class 1, class 2, or class 3) if (i) that business is to be his or her principal business and (ii) the applicant has a "place of business suitable for the purpose." All such licenses expire on January first of each year. Section 59 also contains a provision for a hearing, prior to the issuance of a class 3 license only (motor vehicle junk license), with notice of the hearing to abutters.[6] There is also a provision for judicial review: an appeal may by taken by any person aggrieved by any action taken by the licensing board under § 59 to a judge of the superior court who, after due notice, shall "give a summary hearing on such appeal, and shall have jurisdiction in equity to review all questions of fact or law . . . and may make any appropriate decree."

Even though the selectmen were only required by statute to hold a hearing with respect to Goldie's class 3 license application,[7] it is clear that the selectmen, without objection from Goldie's (on the possible ground that the § 54 license

---

[5]The selectmen, if acting under § 54 and article XVI of the Walpole by-laws, "may license" suitable persons, and if acting under § 59, "may grant" a license to a proper person.

[6]The local licensing board may "waive the annual hearing for renewal of a class 3 license."

[7]With regard to possible hearing requirements for both § 54 and § 59 license renewals, see *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491, 495-500 (1965). See also *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. 296, 302 (1985), where the court observed that "the judicial review contemplated by the certiorari action of G. L. c. 249, § 4 [which Goldie's cited and is applicable to the § 54 license applications], suggests to agencies that hearings should be allowed even when the governing statutes remain silent on the point. The general observation to be made is that judicial review, as accorded by such a statute as G. L. c. 249, § 4, naturally draws with it the advisability if not the necessity of some appropriate hearing." The court also stated, "In this Commonwealth the right to a hearing where government exerts power upon an individual in a matter of consequence has been related, on occasion, not strictly to the Constitution, but to an ethic that pervades our legal system." *Id.* at 303. Contrast *Milligan* and *Yerardi's* with *Roslindale Motor Sales, Inc.* v. *Police Commr. of Boston*, 405 Mass. 79, 82-84 (1989).

applications were filed one day *after* the hearing), either at the hearing or in its brief to this court, conducted the hearing as bearing on all four applications,[8] and they relied on the evidence produced at the May 9 hearing as the basis for their decision in respect to all four applications.

2. *Standard of judicial review.* The appropriate standard of review of the denial of the § 54 licenses — a certiorari case — "must be determined according to 'the nature of the action sought to be reviewed.'" *Caswell* v. *Licensing Commn. for Brockton*, 387 Mass. 864, 877 (1983), quoting from *Boston Edison Co.* v. *Boston Redev. Authy.*, 374 Mass. 37, 49 (1977). Section 54 and the town's by-law permit the exercise of broad discretion by the selectmen, rather than specifying "narrow and objective criteria" for the issuance of a license, in consequence of which the standard of review applicable to the two § 54 applications is "error of law or abuse of discretion, as measured by the 'arbitrary or capricious' test." *Caswell*, *supra*, at 878, and *Yerardi's*, *supra* at 300 n.7. Under this standard of review, where, as here, a hearing has been provided, the record to be reviewed is the entire record of the hearing before the selectmen, including the reasons for their decision. We must determine whether the Superior Court correctly decided that the record of the proceedings before the selectmen showed no error of law or abuse of discretion. See *Carney* v. *Springfield*, 403 Mass. 604, 605 (1988).

The standard of review provided by § 59, in a case where a hearing has been provided, see note 7, *supra*, is a different matter; it is not altogether clear what the Legislature had in mind by providing for a "summary hearing" together with "jurisdiction in equity to review all questions of fact or law."[9]

---

[8] Goldie's record appendix includes excerpts from the transcript of the hearing. At that hearing Goldie's counsel stated that the selectmen had all four license applications before them.

[9] See Cella, Administrative Law and Practice (1st ed. 1986) for illustrations of the wide variety of legislative enactments with regard to judicial review.

No reported decision appears to have considered the question presented here.[10] The provisions for judicial review under § 59 are broader than those under § 54, where there is no specific provision for judicial review. The provisions in § 59 requiring a "summary hearing" and a "review [of] all questions of fact or law," when read in the context of an "appeal" from a decision of the licensing authority in "refusing to grant, or revoking a license for any cause," imply strongly that only the record before the licensing authority, including the reasons for its decision, must be reviewed, both as to the facts and the law. We conclude, then, that Goldie's is entitled to a review of the transcript of the hearing on May 9, 1989, as well as the decision of the selectmen. The standard in the Superior Court is whether the decision of the selectmen is based upon an error of law or is unsupported by substantial evidence. Compare G. L. c. 30A, § 14(7)(*c*) and (*e*). Our review is to determine whether the Superior Court correctly made those determinations. Compare *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 377 Mass. 897, 903 (1979).

3. *Conclusions.* The record appendix includes only excerpts from the transcript of the hearing before the selectmen, and we shall assume, therefore, that the parties agree that those excerpts contain all the testimony material to our decision.

The decision of the selectmen recites six reasons for the denial of the four license applications. See note 4, *supra*. We need not review either the correctness or the adequacy of all six reasons, for one of the assigned reasons is sufficient to justify the decision of the selectmen. We refer to the finding that Goldie's was in violation of G. L. c. 140, §§ 54A and 59A, as inserted by St. 1967, c. 600, §§ 2 and 3. Those two sections contain provisions requiring the licensee's place of business to be "screened from view either by natural objects or well-constructed and properly maintained fences at least six feet. . . ." Absent compliance with these provisions, no

---

[10]*Roslindale*, see note 7, *supra*, involved only a class 2 license where there was no hearing.

licenses may be granted under § 54 (by virtue of § 54A) or under § 59 (by virtue of § 59A).

We have reviewed the transcript included in the record before us, having in mind that the "evidentiary niceties found in the courtroom" need not be observed at a hearing before selectmen. See *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. 296, 303-305 (1985). There was undisputed testimony by the building inspector of Walpole that a 110 foot natural barrier of trees — a "buffer barrier for the property," according to the inspector — had been "destroyed by taking down of trees." This destruction of the screening of Goldie's property "by natural objects" is evidence sufficiently substantiated to support the conclusion of the selectmen that the issuance of the § 54 licenses was prohibited by G. L. c. 140, § 54A, and the issuance of the § 59 licenses was prohibited by G. L. c. 140, § 59A. It follows that there was no error of law or abuse of discretion with regard to the refusal to issue the § 54 licenses, and the decision to refuse to issue the § 59 licenses was supported by substantial evidence untainted by any error of law.[11]

Finally, given the limited review provided by G. L. c. 249, § 4, and by § 59, there is no merit to Goldie's claim that it

---

[11]It is appropriate to add, in the event Goldie's elects to renew its applications following compliance with §§ 54A and 59A, that some of the remaining five reasons assigned by the selectmen may not be related to the purposes of either § 54 or § 59. In general, the selectmen may not use the denial of the licenses as a means of enforcing other provisions of public laws. See *LaPointe* v. *License Bd. of Worcester*, 389 Mass. 454, 462 (1983), quoting from *Commonwealth* v. *Silverman*, 220 Mass. 552, 554 (1915) (the actions of a licensing authority acting under G. L. c. 140, § 54, "must be calculated to achieve" the objectives of § 54, namely, " 'to make it possible that junk, old metals and second hand articles stolen may be traced and restored to their owners.' "). Contrast *McDonald's Corp.* v. *East Longmeadow*, 24 Mass. App. Ct. 904, 905-906 (1987) (in granting certain licenses the local authorities may consider factors generally related to the "public good").

should be permitted the opportunity to obtain discovery and introduce evidence extrinsic to the record.[12]

*Judgment affirmed.*

---

[12]There may be exceptions to this result in other cases. See *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 758 (1976) (plaintiff made cognizable constitutional claims based on facts extrinsic to the record).