JOHN F. LUDVIGSEN *vs.* TOWN OF DEDHAM & another.[1]

No. 98-P-970.

Norfolk. November 15, 1999. - March 2, 2000.

Present: PORADA, KAPLAN, & GILLERMAN, JJ.

*License. Motor Vehicle,* License to buy and sell. *Municipal Corporations,* Licensing board.

In an action brought under G. L. c. 140, § 59, to review the denial of a used car dealer's license, the judge correctly concluded that the decision of the board of selectmen was unsupported by substantial evidence, was arbitrary and capricious, and an abuse of discretion; the matter was remanded to the board for further proceedings. [684-686]

CIVIL ACTION commenced in the Superior Court Department on December 23, 1997.

The case was heard by *Thomas E. Connolly,* J.

*Katharine I. Goree* for the defendants.

*Andrew M. Osborne* for the plaintiff.

KAPLAN, J. We affirm a decision of a judge of the Superior Court which holds that the Dedham board of selectmen committed error in denying a "class 2" used car dealer's license to the plaintiff, John F. Ludvigsen, the alleged ground being that he did not have (to quote the statute) "a place of business suitable for the purpose." G. L. c. 140, § 59.[2] For convenience of reference, we set out in an appendix a (partial) text of this statute describing the basic license requirements and the scope of judicial review; also reproduced is a description of the class 2 license (from § 58).

---

[1]Board of selectmen of Dedham.

[2]The statute, G. L. c. 140, § 59, lists two additional basic requirements — that the applicant be a "proper person" and that the business will be his "principal business." As the selectmen denied the license on the place-of-business ground, they did not reach any question about the other requirements.

1. The following appeared at a hearing before the selectmen on November 2, 1997, upon an application for the license dated October 16, 1997.[3] The plaintiff runs a used car business in the Jamaica Plain section of Boston under license. He has operated used car businesses in the Boston area for sixteen of the last eighteen years. Recently he decided to move to do business in Dedham, where he has resided for the past twenty-six years; evidently he wishes to be closer to his ailing wife.

The plaintiff sought out an open parcel of land at 243 Milton Street and rented it for a period of twenty-five years with an option to purchase. In 1995 he applied to the zoning board of appeal of Dedham for a special permit, but the parties now agree this was not needed; the contemplated used car business is allowed in the "Limited Manufacturing B" (LMB) zone of the locality.

The parcel on Milton Street, 28,953 square feet in area, is at present in extremely rundown condition, as shown in photographs tendered to the selectmen. The plaintiff's proposal, as approved by the design review advisory board, calls for clearance of the lot and construction thereon of a one-story building; there will be paved parking areas and provision for drainage. The plaintiff has undertaken to secure tests for possible contamination. An abutter, George Atkins, said the property was currently used as a dumping ground and sorely needed cleaning up. Doctor John D'Esopo, who has an animal medical center next door to the parcel, supported the application.

The plaintiff will operate the used car business at the site as an unincorporated sole proprietorship under the name "7L's Auto." He will display no more than thirteen cars for sale at a time; twenty-seven parking spaces in all appear under the plan approved by the planning board.

With respect to the usual question about traffic, the parcel is more than 400 feet on Milton Street distant from the intersection at River and Milton Streets. The plaintiff suggested a comparison of the traffic likely to be generated by a thirteen-used-car business with the traffic entailed by other uses permitted in this zoning district, ranging from houses of worship to retail stores. Note the considerable variety of allowed uses in the Dedham "Use Regulation Table" for the LMB zoning district reproduced in the record.

---

[3]Section 59 does not in terms require a hearing in class 2 cases; it does so for class 3 (motor vehicle junk license).

As to similar uses in the vicinity, there are four class 2 licensees on Milton Street comprising a total permitted display of up to twenty-three used cars; three licensees on River Street comprising up to sixteen; one licensee on Cliff Way with up to three used cars; one licensee on River Street without a prescribed limit.

As to expressions from outsiders: Tom Polito, a friend and associate of the plaintiff, spoke at the hearing in favor of the application; four letters and a petition signed by 129 Dedham residents were received also expressing support. Nicholas Civitarese, chairman of district 3, where the property is located, wrote in opposition, asking the board to "honor the wishes of the majority of the [residents] in Districts 3 and 4" and deny the plaintiff "the right to build a repair shop and also deny him a license to sell used cars" as there were "enough repair shops" in the area. Joe Findlen, chairman of district 4, also spoke of the number of used car dealers and repair shops in the neighborhood. There was a misconception here: section 58 of G. L. c. 140, requires that a class 2 licensee shall "demonstrate[] access to repair facilities sufficient to enable him to satisfy the warranty repair obligations" of G. L. c. 90, § 7N 1/4[4]; in fact the plaintiff met this provision by contracting with a Dedham company to furnish repair services off the Milton Street premises. Civitarese and Findlen had earlier, in December, 1995, testified in favor of a used car license for four vehicles on premises on Milton Street. Protestations on the part of the plaintiff (unjustified by evidence) that "political" factors were at work, need not detain us.

2. The board voted to deny the license because the site was unsuitable: a license there, said the board, would "generate excessive traffic at an already busy intersection" and there were "already more than an adequate number of Class II licenses in operation in the area."

Upon the plaintiff's appeal to the Superior Court under G. L. c. 140, § 59, a judge of that court reversed the board.[5] After

---

[4]Section 7N 1/4(2)(A)(i), as inserted by St. 1987, c. 289, § 1, states: "No used motor vehicle shall be sold in the commonwealth by a dealer to a customer unless accompanied by an express written warranty covering the full cost of both parts and labor necessary to repair any defect that impairs the said motor vehicle's safety or use[.]"

[5]The judge ordered a remand of the case to the selectmen for issuance of

taking a view (with consent of the parties), the judge said there was no evidence to support the board's traffic reason: "The area is zoned in a limited manufacturing zone with neighboring retail stores, warehousing and auto service stations. A used car business, by its nature, does not generate excessive traffic." So also the judge found "no indication in the record that an additional car dealership, offering 13 cars for sale, would unduly burden the existing car dealerships."

3. Section 59 states that the judge of the Superior Court shall "give a summary hearing on such appeal, and shall have jurisdiction in equity to review all questions of fact or law and may affirm or reverse the decision of the board or officer and may make any appropriate decree." This is conspicuously broad review. It recalls the traditional scope of appellate review in equity causes before the merger of law and equity. See James, Hazard, & Leubsdorf, Civil Procedure § 1209, at 669 (4th ed. 1992). By this statutory standard, it could hardly be said that the judge's decision herein was erroneous. In *Goldie's Salvage, Inc.* v. *Selectmen of Walpole*, 31 Mass. App. Ct. 726 (1992), we chose to forbear going to so plenary a standard, and held, as to a class 2 license where a hearing, although not required by statute, had in fact been accorded,[6] that "[t]he standard in the Superior Court is whether the decision of the selectmen is based upon an error of law or is unsupported by substantial evidence. Compare G. L. c. 30A, § 14(7)(*c*) and (*e*). Our review is to determine whether the Superior Court correctly made those determinations."[7] *Id.* at 732. The judge properly held in the present case that the decision of the board of selectmen was "unsupported by substantial evidence": the excuse of traffic was threadbare and the reference to existing licenses, without any analysis or indication of a criterion or criteria was not

the license. This was mistaken, as the two other basic requirements had yet to be considered. See *infra* our disposition of this appeal.

[6]The affording of a hearing (not opposed by the parties) was in line with *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. 296, 302 (1985), where we said that a statutory provision for judicial review "suggests to agencies that hearings should be allowed even when the governing statutes remain silent on the point. The general observation to be made is that judicial review [as accorded by statute] naturally draws with it the advisability if not the necessity of some appropriate hearing." See on this matter *Goldie's Salvage*, 31 Mass. App. Ct. at 730 n.7.

[7]The court held in *Goldie's Salvage* that the selectmen acted on substantial evidence in denying the license on the ground that the company had destroyed the screening of the junkyard premises required by G. L. c. 140, § 59A(*c*)(4).

stronger. The judge, indeed, criticized the selectmen's decision still further: "While the Board has considerable discretion in the issuance of licenses, . . . it has abused its discretion in this case," for its reasons for denying the license were "arbitrary and capricious." The judge cited *Roslindale Motor Sales, Inc.* v. *Police Commr. of Boston*, 405 Mass. 79 (1989), where the court overturned the police commissioner's negative decision on the renewal of a class 2 license that had been rendered without a hearing (a factor noted in *Goldie's Salvage*, 31 Mass. App. Ct. at 732 n.10). As the commissioner had failed to state a reason or reasons for his action, he had committed an "abuse of discretion, as measured by the 'arbitrary or capricious' test." 405 Mass. at 84.

Agreeing with the Superior Court judge that the decision of the board of selectmen erred on the issue of the place of business, we shall remand the case to the board for further proceedings consistent with our opinion and subject to any consideration by the board of other statutory requirements (see note 2).

*So ordered.*

APPENDIX.

*General Laws c. 140, § 59 (in part)*, as amended through St. 1989, c. 243: "No such license shall be granted unless the licensing board or officer is satisfied from an investigation of the facts stated in the application and any other information which they may require of the applicant, that he is a proper person to engage in the business specified in section fifty-eight in the classifications for which he has applied, that said business is or will be his principal business, and that he has available a place of business suitable for the purpose. The license shall specify all the premises to be occupied by the licensee for the purpose of carrying on the licensed business . . . . No original license or permit shall be issued hereunder to a person within said class 3 until after a hearing, of which seven days notice shall have been given to the owners of the property abutting on the premises where such license or permit is proposed to be exercised. Except in the city of Boston, the licensing board or officer may, in its discretion, waive the annual hearing for renewal of a class 3 license. . . . Any person aggrieved by any action of the licensing board or officer refusing to grant, or revoking a license for any cause may, within ten days after such action, appeal therefrom to any justice of the superior court in the county in which the premises sought to be occupied under the license or permit applied for are located. The justice shall, after such notice to the parties as he deems reasonable, give a summary hearing on such appeal, and shall have jurisdiction in equity to review all questions of fact or law and may affirm or reverse the decision of the board or officer and may make any appropriate decree. The parties shall have all rights of appeal as in other cases."

*General Laws c. 140, § 58 (in part)*, as appearing in St. 1987, c. 289, § 2: "*Class 2*. Any person whose principal business is the buying or selling of second hand motor vehicles may be granted a used car dealer's license; provided, however, that such person maintains or demonstrates access to repair facilities sufficient to enable him to satisfy the warranty repair obligations imposed by section seven N $\frac{1}{4}$ of chapter ninety. A used car dealer shall remain liable for all warranty repairs made and other obligations imposed by said section seven N $\frac{1}{4}$ of said chapter ninety."