Roach, Christine M., J.
Following “summary hearing”/bench trial June 12, 2009, and review of all testimony, exhibits, stipulations of the parties, and post-trial filings completed June 17, 2009, the court finds and rules as follows with respect the claims in this action.

FINDINGS OF FACT

All of the below-enumerated Findings of Fact represent findings by the court, including but not limited to determinations of the credibility, weight, and probative value of the evidence adduced at hearing and reasonable inferences drawn from that evidence, as well as stipulations by the parties.

The Business Application

1. Plaintiff Matthew Grenier, a twenty-three year old college graduate, is a life-long resident of Shrewsbury, who applied to the town’s Board of Selectmen (the Board) for a so-called Class 2 license to sell used cars, pursuant to G.L.c. 140, section 59. Grenier’s business plan was to purchase used cars at private auction and sell them over the internet. Grenier had some experience working for used car businesses, as well as with auctions and internet advertising. Grenier Trial Testimony, and Trial Exhibits 2 and 3.
2. Grenier’s application was first filed in the fall of 2007, was withdrawn without prejudice and re-filed, and was ultimately voted upon in February and April 2008, following multiple public hearings. Trial Exhibit 3.The Board denied the application, and Grenier appealed that decision to this court. Complaint, Docket at Paper 1.
3. Joseph Grenier, plaintiffs father, owns the location at 787 Hartford Turnpike (also known as Route 20) in Shrewsbury, at which the proposed business was to be housed (the site), and granted his son permission to conduct business as MAG Auto Sales using a portion of the site. Grenier Trial Testimony; Trial Exhibit 3.
4. The site is located in a Limited Industrial Zoning District. In the general vicinity on Route 20 are multiple commercial operations. In or about December 2007, the town’s Zoning Board of Appeals granted Grenier a variance allowing his proposed business to operate at the site. Trial Exhibit 3.
5. Grenier’s business proposal was unique in the experience of the Board. Grenier represented throughout the application process that he intended to engage in the sale of high-end, luxury, antique or vintage automobiles, primarily over the internet. And, while on occasion the proposal sought permission to “display” two or three automobiles in the parking lot of the site, ultimately Grenier sought only to store three to five cars inside one of the garage areas at the site. Grenier repeatedly told the Board he expected ninety per cent (90%) of his sales to come from out of state. DePalo Trial Testimony; Trial Exhibits 2 and 3.
6. Grenier’s business plan did not include repairs (or restorations) on site. He expected to contract with outside companies for that work, although at the time of the initial hearings he had no agreements in place to do so. Grenier ultimately produced documentation *377 from a servicing entity. The proposal did not require street-side signage, and there was no issue of increased vehicular traffic. Trial Exhibits 2 and 3.
7. Other than the licensing aspect, the bulk of the proposed business is regulated by the Massachusetts Registry of Motor Vehicles, with enforcement by the local police department. Grenier was familiar with those requirements and was prepared to comply with them. Grenier Trial Testimony; Trial Exhibit 3.
8. Nonetheless, throughout the application process questions remained regarding certain concerns expressed by the local fire department about vegetation and trash at the site. The Board decided to proceed with its deliberations on the representation that the fire chiefs concerns would be addressed. Trial Exhibit 3.

Administrative Procedures Below

9. The Board heard Grenier and matters concerning his application on four different occasions, and Grenier was represented by counsel on each occasion. The first public hearing occurred on October 15, 2007. Grenier voluntarily withdrew his application at that hearing due to concerns expressed by the Board about the Policy discussed below, and Grenier’s decision to proceed first to the Zoning Board of Appeals for a variance. Trial Exhibit 3.
10. Grenier appeared before the Board again on January 28, 2008, at which time the Board discussed the perceived public need (or lack thereof) for such a business. In the interim the Board had met twice in open meeting to discuss the Policy identified below, its lack of familiarity with regulating internet sales, and the perception of some Board members that “the statute hasn’t caught up with the internet.” Trial Exhibit 3.
11. At the January 28, 2008 meeting Grenier reiterated his intent to work from the site as his primary sales business location, but to carry out any warranty and repair obligations elsewhere. He again described his plan to market luxury and antique vehicles, and explained the application was currently in the name of his father’s corporation, because his own business was going to be organized as a d/b/a under his father, for insurance (and other cost) reasons. Grenier offered to withdraw his application for a second time to address this concern. The Board continued the hearing. Id.
12. By the hearing on February 11, 2008, the proposal was without “outside component,” that is, the model was “back to totally inside storage” of the automobiles. Grenier was questioned again at this hearing about his anticipated customer base, and there was additional discussion about the site plan for the office/storage area meeting statutory requirements. Trial Exhibit 3.
13. Ultimately the Board voted 5-0, on February 25, 2008, to deny the license application. Trial Exhibit 2. There was a fifth hearing on April 24, 2008, for reasons of “a technical mistake,” in the earlier hearings. The vote on the application remained the same at this meeting. Trial Exhibit 3.
14. The Board’s primary reasons for denying the license were that the proposed business did not offer something different to the Shrewsbury public not already being met by other licensees; and Board policy required affirmative reasons to justify exceeding twenty (20) licenses. DePalo Trial Testimony; LeBreaux Trial Testimony; Card Trial Testimony; Miller Trial Testimony; Trial Exhibit 3.

1999 License Policy

15. In April 1999 the Board adopted a Policy Number 9, the stated purpose of which was to limit the Class 2 used car licenses issued to twenty (20), which the Board determined would “sufficiently meet the needs of the public for the Town of Shrewsbury.” (The Policy.) The Policy was revised in 2001 in ways not relevant here. Trial Exhibit 4.
16. Pursuant to the Policy, the Board was still required to accept Class 2 used car dealer applications and hold hearings, but could “at any time deny a request based on the public’s interest already being met.” Id., at para. 3. Existing licenses were grandfathered; there were twenty-three (23) outstanding licenses at the time the Policy was enacted in 1999. DePalo Trial Testimony.
17. One impetus for the Policy was complaints from town residents about the number of used car establishments in Shrewsbury. The Policy was adopted following research and study by the Board, as well as public hearings. DePalo Trial Testimony.
18. From 1999 through 2003, although several licenses changed hands through Board-approved transfer, the Board received no applications for new licenses. DePalo Trial Testimony.
19. In March 2003, following two public meetings, the Board reviewed and approved a new application by Enterprise Rent-A-Car for an operation involving the presence of thirty to fifty fleet automobiles for sale. The Enterprise operation would have been the twenty-first (21st) such open license at the time. In its deliberations the Board acknowledged the Policy, and heard from at least one citizen in support of strict limits, but nonetheless determined the Policy to be a guideline (not a law, and not something “set in stone”), whose application could be flexible to benefit the community. The Board found the Enterprise proposal would benefit the community by providing a rental location, increased tax revenues, and jobs for Shrews-bury area residents. Trial Exhibit 3, 2/4/03 at 9, 19, 31-32; 3/10/03 at 3, 18, 24. However, following approval of the license, the business did not go forward. DePalo Trial Testimony.
20. At the time of the Grenier application, twenty (20) licenses were outstanding. Trial Exhibit 3.
*378 21. The Board discussed and considered the application of the Policy to the Grenier application throughout the multiple public hearings. The Board discussed whether the Policy should be revisited. It considered the application of the Policy’s concerns to internet operations. It repeatedly questioned Grenier about how his proposed business would meet or benefit the needs of the Shrewsbury community. Id.
22. Grenier admits he was aware of the Policy, and the fact that twenty (20) licenses were outstanding, when he first applied in 2007. He testified a clerical employee in the town offices told him when he picked up the application that twenty licenses were outstanding and the Board was not issuing any new licenses. Grenier further testified this position was affirmed in a conversation with Board Chair DePaulo. Nonetheless, Grenier “figured he would give it a shot.” Grenier Trial Testimony.

Legal Standards

1. The grant of Class II used car business licenses is governed by G.L.c. 140 section 59. The statutory requirements are that: 1) the applicant is a proper person to engage in the business; 2) the business will be his principal business; and 3) he has available a place of business suitable for the purpose.
2. However, the licensing authority has broad discretion to grant or deny a license, provided its decision is not arbitrary or capricious or based on an error of law. Roslindale Motor Sales, Inc. v. Police Comm’r of Boston, 405 Mass. 79, 84 and note 6 (1989) (agency decision may be affirmed for legally tenable ground that is not arbitrary and capricious); c. 140 section 59 (a commissioner “may grant” a license).
3. Thus this court’s scope of review under the statute is that traditional to equity cases. The Board’s decision will be upheld unless there has been an error of law or it is unsupported by substantial evidence. Ludvigsen v. Town of Dedham, 48 Mass.App.Ct. 682, 685 (2000) (“This is conspicuously broad review”); Goldie’s Salvage, Inc. v. Board of Selectmen of Walpole, 31 Mass.App.Ct. 726, 731-32 (1992) (distinguishing certiorari review). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion. Murray’s Liquors, Inc. v. ABDC, 48 Mass.App.Ct. 100, 102 (1999) (judicial inquiry under the substantial evidence test is limited).

Rulings

1. The Board was well within both its executive and its legislative authority to enact Policy 9 limiting the number of used car sales licenses issued at any one time. I find the Policy was enacted in good faith following research, investigation, deliberation and public hearing, all in keeping with the Board’s role as policy maker for the town.
2. There is no evidence in this record the Board applied the Policy in an arbitrary or capricious fashion. I find the 1999 Enterprise Rent-a-Car application to be readily distinguishable from Grenier’s 2007 application in numerous respects. The Enterprise proposed use was a traditional one readily comparable to others of its ilk; and the Board reasonably determined the proposal could provide needed services, jobs, and tax revenue to Shrewsbury citizens.
3. Based on both the record of decision and the testimony at trial, I find and rule the Board’s determination that Grenier’s business plan did not sufficiently meet the needs of the Shrewsbury public was reasonable, and was arrived at following appropriate notice to Grenier, public airing of the issues, and full deliberation.
4. Accordingly, there is substantial evidence for the decision, and no error of law or abuse of the Board’s discretion.

Conclusion

Plaintiffs prayer for declaratory relief is DENIED. The decision of the Board is AFFIRMED, and this case is DISMISSED WITH PREJUDICE.