460           80 Mass. App. Ct. 460 (2011)

Grenier *v*. Board of Selectmen of Shrewsbury.

MATTHEW GRENIER[1] *vs.* BOARD OF SELECTMEN OF
SHREWSBURY & another.[2]

No. 10-P-638.

Worcester. February 9, 2011. - September 26, 2011.

Present: BERRY, KATZMANN, & GRAINGER, JJ.

*Motor Vehicle,* Dealer. *Municipal Corporations,* Selectmen, Licensing board,
Motor vehicle. *Declaratory Relief. Due Process of Law,* Vagueness of
ordinance.

A town licensing authority (board), relying on a policy it had earlier adopted
that limited the town's number of used automobile dealer licenses to
twenty, unlawfully denied the plaintiff's application for a license to sell
used automobiles through the Internet, where the policy, which gave the
board unfettered discretion to grant a license in excess of the twenty-
license cap, was invalid by reason of vagueness, given that it lacked any
fundamental standards within which the board could act [464-465]; and
where the board's denial, in reliance on the challenged policy, was unsup-
ported by substantial evidence [465-466].

CIVIL ACTION commenced in the Superior Court Department on
April 22, 2008.

The case was heard by *Christine M. Roach,* J.

*Stephen J. Gordon* for the plaintiff.

*T. Philip Leader* for the defendants.

BERRY, J. The board of selectmen of Shrewsbury (board), act-
ing as the licensing authority for the town of Shrewsbury (town),
denied the plaintiff Grenier's application for a license to sell
used cars. The board based the denial on its "Policy Number
9" (Policy 9),[3] which purports to cap at twenty the number of

---

[1]Doing business as MAG Auto Sales.

[2]Town of Shrewsbury.

[3]Policy 9 states, in pertinent part, as follows:

 "1. The Board of Selectmen on April 12, 1999 voted in favor of
limiting the number of Class 2 used dealer licenses to twenty (20). The

class 2 used car dealer licenses in the town. When Policy 9 was adopted in 1999, the board did not specify why that precise number would be the cap. Rather, all that was stated by the board was that twenty licenses would "sufficiently meet the needs of the public for the Town." Notwithstanding this, Policy 9 reserved unlimited and standardless discretion to the board to grant licenses beyond the purported cap. In this regard, Policy 9 provided that, even if the twenty-license limit was reached, class 2 used car dealer license applications would be accepted, and the board, in its unfettered discretion, could decide to grant a license in excess of the twenty-license cap, or could "at any time deny a request [beyond the cap] based on the public's interest already being met."

We reverse the judgment denying the plaintiff's complaint for declaratory relief. We conclude that to the extent Policy 9 purports to set a per se cap, it is invalid as it conflicts with the statute governing the grant of class 2 used car dealer licenses.[4]

---

Board of Selectmen conducted a public hearing on April 5, 1999. In addition, the Board received public comments by telephone and surveyed surrounding Towns. It was then determined that limiting the number of Class 2 used car dealer licenses to twenty (20) would sufficiently meet the needs of the public for the Town of Shrewsbury.

" . . .

"3. The Board of Selectmen will still be required to accept Class 2 used car dealer license applications and hold hearings but could at any time deny a request based on the public's interest being met.

"4. This policy is set by the current Board and can be subject to review and change as conditions in the Town of Shrewsbury change."

[4]The statutory scheme for licensing of used car sales appears in a definitional section in G. L. c. 140, § 58, describing the classes of licenses, and in G. L. c. 140, § 59 (quoted in note 5, *infra*), which sets forth the criteria that municipal licensing authorities shall apply in granting licenses.

As pertinent to this case, G. L. c. 140, § 58, as amended by St. 2002, c. 422, § 1, defines a license to sell used cars as follows:

"(a) Licenses granted under [G. L. c. 140,] sections 59 and 59A shall be classified in accordance with subsections (b) to (d), inclusive.

" . . .

"(c) Class 2. A person whose principal business is the buying or selling of second hand motor vehicles, a person who purchases and displays second hand motor vehicles for resale in retail transactions, and any

See G. L. c. 140, § 59.[5] Such a per se cap erases the case-by-case review that the statute requires. Furthermore, Policy 9 is not sustainable as matter of law because it lacks any discernible standards, rendering the policy so vague as to pose a risk of arbitrary and capricious application defying judicial review. "[V]ague laws that do not limit the exercise of discretion by officials engender the possibility of arbitrary and discriminatory enforcement." *Caswell* v. *Licensing Commn. for Brockton*, 387 Mass. 864, 873 (1983). The vagaries of Policy 9 are tellingly reflected in the errant commentary of one board member concerning the review of the plaintiff's application and the ensuing denial thereof by the board. See note 8, *infra*, and accompanying text.

Furthermore, even if we assume that Policy 9 is valid, as applied in this case, the board's denial of the plaintiff's application under Policy 9 appears to rest on an outright and absolute rejection of Internet sales as not beneficial to the town,[6] was not based on substantial evidence, and was arbitrary and capricious.

1. *Procedural and factual background.* At the time of Policy

other person who displays second hand motor vehicles not owned by him pursuant to an agreement in which he receives compensation, whether solely for displaying the vehicles, upon the sale of each vehicle, or otherwise, may be granted a used car dealer's license and shall be subject to [certain specified] conditions."

[5]General Laws c. 140, § 59, as amended by St. 1948, c. 181, § 2, the used car dealer licensing statute, provides in pertinent part as follows:

"The police commissioner in Boston and the licensing authorities in other cities and towns may grant licenses under this section which shall expire on January first following the date of issue unless sooner revoked. . . . No such license shall be granted unless the licensing board or officer is satisfied from an investigation of the facts stated in the application and any other information which they may require of the applicant, that he is a proper person to engage in the business specified in section fifty-eight in the classifications for which he has applied, that said business is or will be his principal business, and that he has available a place of business suitable for the purpose."

[6]In light of our disposition and the determinations that Policy 9, by its terms, is in conflict with the licensing statute, and that Policy 9, as applied in this case, was not supported by substantial evidence and was arbitrary and capricious, we need not address the plaintiff's arguments that Policy 9 imposes an improper restraint on interstate commerce by what amounts to a "blackout" on Internet sales, which impermissibly reduces competition within the town, as well as the national used car market.

9's adoption in 1999, there were twenty-three class 2 used car dealer licenses outstanding. All of these twenty-three licenses were protected as grandfathered when Policy 9 was adopted. For reasons not apparent on the record, over the years, the number of outstanding used car dealer licenses was reduced to twenty. Certain of these twenty existing licenses were transferred, with board approval, from previous holders to new licensees. Thus, the status quo of twenty licenses was locked in a process of transfers.

In 2007, the plaintiff applied for a class 2 used car dealer license. At this time, there were twenty such licenses outstanding. As submitted to the board, the plaintiff's business plan provided that through Internet auction sites, the plaintiff would purchase and sell high-end, luxury, antique, and vintage automobiles. The plaintiff planned to store only three to five cars inside in a garage owned by his father's construction company. The garage is located in a limited industrial zoning district in the vicinity of multiple other commercial operations.

The town's zoning board of appeals granted a variance to allow the proposed business to operate at the site. The police department, the treasurer's office, and the fire department approved the site for use as proposed by the plaintiff. The board, however, invoking Policy 9, voted to deny the plaintiff's application for a class 2 used car dealer license. Reduced to essentials, the board — without adequate findings and consideration of the particular facts underlying the application — rested the denial on the generalized concept that the public need was adequately met by the existing twenty licenses and, as previously noted, that out-of-State, Internet sales would not benefit the town.

The plaintiff filed a complaint in Superior Court, seeking entry of a judgment declaring that Policy 9 was invalid and in violation of G. L. c. 140, § 59. Beyond that declaration, the plaintiff also sought a declaration that the board's denial of the application was unlawful, not based on substantial evidence, and was arbitrary and capricious, and that, accordingly, an order should issue granting the plaintiff a class 2 license to sell used cars.

Following a bench trial, a Superior Court judge denied the requests for the entry of declaratory judgment and affirmed the decision of the board. First, with respect to the declaratory challenge to the validity of Policy 9, the judge held that the "[b]oard

was well within both its executive and its legislative authority to enact Policy 9," and that Policy 9 was adopted in good faith by the board as the policy maker for the town. Second, in denying the request for declaratory judgment concerning the board's denial of the plaintiff's application, the judge reasoned that the plaintiff's business plan to sell used cars through the Internet did not advance the needs of the town, and that the board's denial determination was reasonable. We reverse for the following reasons.

2. *Discussion.* The requests for declaratory relief in this case are intertwined with the standards for judicial review under the used car dealer licensing statute, G. L. c. 140, § 59. Under that statute, an appellate court focuses on both "whether the decision of the [board] is based upon an error of law or is unsupported by substantial evidence." *Ludvigsen* v. *Dedham,* 48 Mass. App. Ct. 682, 685 (2000).

The used car dealer licensing statute imposes on a licensing board a requirement *"to determine the facts and to pass upon the application in each instance* under the serious sense of responsibility imposed upon [it] by [the board's] official position[] and the delicate character of the duty entrusted to [it]" (emphasis added). *Roslindale Motor Sales, Inc.* v. *Police Commr. of Boston,* 405 Mass. 79, 83-84 (1989), quoting from *Mosey Café* v. *Licensing Bd. for Boston,* 338 Mass. 199, 205 (1958). This responsibility for case-by-case review, as required by the licensing statute, must be based on neutral and defined standards. These are not present in Policy 9.

Furthermore, while there is broad discretion in reviewing license applications by a municipal authority, that discretion is not unfettered. See *Roslindale Motor Sales, Inc.* v. *Police Commr.* of Boston, 405 Mass. at 82; *Goldie's Salvage, Inc.* v. *Selectmen of Walpole,* 31 Mass. App. Ct. 726, 730 (1992). The integrity of a licensing scheme depends upon standards that ensure fair and even-handed review of applications by the board and a framework for judicial review of whether a particular decision is arbitrary and capricious or based upon error of law. See *Ludvigsen* v. *Dedham, supra.* Policy 9 fails in these respects, as the policy lacks any fundamental standards. See, e.g., *Turnpike Amusement Park, Inc.* v. *Licensing Commn. of Cambridge,* 343

Mass. 435, 437-438 (1962) (licensing authority's policy of denying all applications for new and renewed licenses to operate pinball machines not supported by enabling statute and was arbitrary and capricious); *Beard* v. *Salisbury*, 378 Mass. 435, 440-441 (1979) (invalidating town by-law prohibiting removal of sand, loam, or gravel from land not in public use because by-law exercised power provided by neither enabling statute nor Home Rule Amendment).

As noted, Policy 9 purports to be predicated on a capped maximum number of twenty class 2 licenses — notwithstanding that no such cap is provided for by the licensing statute. See G. L. c. 140, § 59. The board contends that Policy 9 is not a hard cap but rather a flexible guideline, which, the board submits, is not in conflict with the licensing statute. We are not so persuaded.[7] Rather than a flexible guideline with set borders, Policy 9 is a borderless zone in which the board may make unfettered decisions absent adherence to defined standards.

Even assuming that Policy 9 were not invalid, there is an independent basis to set aside the board's action in this case. Because Policy 9 lacks standards, it allows for arbitrary and capricious application, such as occurred in this case.[8,9] From all that appears of record, the plaintiff's proposal would have had

---

[7]Contrary to the board's assertion, the present case is distinguishable from the regulations that may limit the number of alcohol licenses. The used car dealer licensing statute, G. L. c. 140, § 59, differs from the liquor licensing statute. Compare G. L. c. 138, §§ 1 et seq. "The general policies and standards to be observed in administering the laws regulating the sale of alcoholic beverages [including the number of licenses] are amply set out in various sections of c. 138." *Connolly* v. *Alcoholic Bevs. Control Commn.*, 334 Mass. 613, 618 (1956).

[8]That Policy 9 lacks standards and may be applied in an arbitrary and capricious manner (as in this case) is illustrated by the following testimony by a board member in respect to the plaintiff's application.

> *Q.*: "And a person coming before the Board making a presentation would not necessarily know what or how you were going to view an application until you actually voted on it, correct?"
>
> *A.*: "That's true."
>
> *Q.*: "And they wouldn't know what criteria you were using in exercising your judgment until you actually voted and maybe elucidated for him what the criteria were in either allowing or denying the license, correct?"

limited negative impact in that there would be only five cars in the industrial garage; none would be stored outside. The plan was approved by the town's police department, the fire department, the treasurer's office, and the zoning board of appeals. These particularized case-by-case facts underlying the plaintiff's application were not adequately addressed by the board, leaving the decision unsupported by substantial evidence. "When a decision contains conclusions that do nothing more than repeat regulatory phrases, and are unsupported by any facts in the record, we are constrained to conclude that the decision is 'unreasonable, whimsical, capricious or arbitrary,' and therefore invalid." *Wendy's Old Fashioned Hamburgers of N.Y., Inc.* v. *Board of Appeal of Billerica*, 454 Mass. 374, 386 (2009), quoting from *Roberts* v. *Southwestern Bell Mobile Sys., Inc.*, 429 Mass. 478, 486 (1999).

For the foregoing reasons, the judgment of the Superior Court is vacated. A new decree shall enter declaring that

> 1. Policy 9 enacted by the board of selectman in 1999 with respect to class 2 used car dealer licenses subject to the State statutory scheme set forth in G. L. c. 140, § 59, is invalid,[10]

and

---

*A.:* "That's correct, they would have the policy that said it would be based on public need."

*Q.:* "And, again, you've never seen any survey or scientific or accepted method of survey — strike that. You've never seen any type of commercial survey done by a polling agency or polling company, for example, to determine what the need was for used car licenses in Shrewsbury, is that correct?"

*A.:* "That's correct."

[9]Further, that Policy 9 allows for uneven and arbitrary application is exhibited by the board's actions in connection with an application filed in 2003 by Enterprise Rent-A-Car. Specifically, in March of 2003, the board approved the town's twenty-first used car dealer license for Enterprise Rent-A-Car. The board acknowledged the purported Policy 9 twenty-license cap but nonetheless approved a twenty-first license for Enterprise Rent-A-Car on the basis that Policy 9 was flexible. (Ultimately, despite the license allowance, the Enterprise Rent-A-Car proposal did not go forward.)

[10]We note that Policy 9, as enacted in 1999, envisioned future revision and provided that "[t]his policy is set by the current Board and can be subject to review and change as conditions in the Town of Shrewsbury change."

2. The plaintiff is entitled to a class 2 used car dealer license subject to the business plan set forth in the plaintiff's application, and to all applicable provisions of the statute.

The case is remanded for proceedings consistent with this opinion.

*So ordered.*